IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| *v.* | § | **Civil Action No. 18-CV-000675** |
| | § | |
| **WALTER OLENICK** | § | |
| | § | |
| **and** | § | |
| | § | |
| **M. RAE NADLER-OLENICK** | § | |
| | § | |
| **Defendants.** | § | |

## COMPLAINT FOR RECOVERY OF CIVIL MONETARY FORFEITURE PENALTY PURSUANT TO 47 U.S.C § 504(a)

Comes now the United States of America, by and through the United States Attorney for the Western District of Texas, and files its original complaint for the recovery of a monetary forfeiture penalty of $15,000.00, and alleges as follows:

## INTRODUCTION

1.      This is a civil action brought by the United States pursuant to 47 U.S.C. § 504(a) alleging violations of the Communications Act of 1934, as amended, 47 U.S.C. § 151, *et seq.* (the "Act"), including violation of 47 U.S.C. § 301, by Defendants Walter Olenick and M. Rae Nadler-Olenick ("Defendants").  The United States seeks the recovery of a forfeiture penalty assessed by the Federal Communications Commission ("FCC") and other relief for Defendants' willful violations of the Act.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1345, and 1355 and 47 U.S.C. § 504(a).

3.      Venue is proper pursuant to 28 U.S.C. §§ 1355(b), 1391(b), and 1395(a) and 47 U.S.C. § 504(a), because the acts or omissions giving rise to this civil action occurred in Austin, Texas, a location within the Western District of Texas, and Defendants are residents of Austin, Texas.

## PARTIES

4.     Plaintiff, the United States of America, is authorized pursuant to 47 U.S.C. § 504(a) to recover a forfeiture penalty that has been assessed by the FCC for violations of the Act.

5.     Defendant Walter Olenick is a resident of the state of Texas who resides at 16216 Stewart Rd., Austin, Texas 78734.  Defendant operated an unauthorized radio station from 1205 East 52nd Street, Austin, Texas, and/or 1127 East 52nd Street, Austin Texas, at all times relevant to the Complaint.

6.     Defendant M. Rae Nadler-Olenick is a resident of the state of Texas who resides at 16216 Stewart Rd., Austin, Texas 78734.  Defendant operated an unauthorized radio station from 1205 East 52nd Street, Austin, Texas, and/or 1127 East 52nd Street, Austin Texas, at all times relevant to the Complaint.

## STATUTORY AND REGULATORY BACKGROUND

7.     The FCC is an independent federal regulatory agency created by Congress to regulate intrastate, interstate, and foreign radio communications pursuant to the Act.  One of the FCC's responsibilities is to ensure that persons do not transmit radio signals within the territorial boundaries of the United States without an FCC license or authorization.   47 U.S.C. § 301.

8.      Section 301 of the Act, 47 U.S.C. § 301, prohibits the operation of any apparatus for the transmission of energy, communications, or signals by radio from one place in the United States to another place in the United States, except under and in accordance with the Act and with a license for that purpose granted under the provisions of the Act.   The Act prohibits these unlicensed transmissions even if they are from one place in a State "to another place in the same State." 47 U.S.C. § 301(a).

9.      FCC regulations contain limited exceptions to the licensing requirements for the operation of certain low power stations that comply with 47 C.F.R. Part 15.   Pursuant to section 15.239 of the FCC's rules, 47 C.F.R. § 15.239, the intentional transmission of radio frequency signals in the 88-108 MHZ band is permitted without an individual license only if the field strength of the signals does not exceed 250 microvolts per meter ("µV/m") at a distance of three meters from the transmitting antenna.   Otherwise, the transmission of such signals must be made pursuant to an individual license granted by the FCC under 47 U.S.C. § 301.

10.     Pursuant to section 503(b) of the Act, 47 U.S.C. § 503(b), any person whom the FCC determines to have willfully or repeatedly failed to comply with the provisions of Chapter 5, Title 47 of the United States Code (including 47 U.S.C. § 301) or any rule, regulation or order issued by the FCC shall be liable to the United States for a forfeiture penalty.

11.     Section 312(f)(1) of the Act, which applies to violations for which forfeitures are assessed under section 503(b), provides that "[t]he term 'willful,' when used with reference to the commission or omission of any act, means the conscious and deliberate commission or omission of such act, irrespective of any intent to violate any provision of this Act or any rule or regulation of the Commission authorized by this Act."   47 U.S.C. § 312(f)(1).   Section 312(f)(2) of the Act, which also applies to violations for which forfeitures are assessed under section 503(b), provides that "[t]he

term 'repeated,' when used with reference to the commission or omission of any act, means the commission or omission of such act more than once, or, if such commission or omission is continuous, for more than one day." 47 U.S.C. § 312(f)(2).

12.     Congress has decreed that forfeitures assessed by the FCC shall be "payable into the Treasury of the United States" and shall be "recoverable . . . in a civil suit in the name of the United States." 47 U.S.C. § 504(a).

13.     "In determining the amount of . . . a forfeiture penalty, the Commission . . . shall take into account the nature, circumstances, extent and gravity of the violation and, with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and such other matters as justice may require." 47 U.S.C. § 503(b)(2)(E); *see also* 47 C.F.R. § 1.80(b)(8) & note.

## THE VIOLATION(S)

14.     On August 12, 2013 in response to a complaint that an unlicensed radio station was operating in the Austin, Texas area on the frequency 90.1 MHz, agents from the FCC Enforcement Bureau's Houston Office ("Houston Office") conducted an investigation to determine the source and strength of any such radio frequency transmission(s).   Using direction-finding techniques, FCC agents from the Houston Office determined the source of radio transmissions on frequency 90.1 MHz in Austin, Texas area to be an antenna mounted on an approximately fifty (50) foot tall tower (the "Antenna") located at 1205 E. 52nd St., Austin, Texas, 78723 (the "First Property").   FCC agents observed a coaxial cable running from the Antenna to a room located at the First Property believed to be a non-residential room, such as a utility or maintenance room.   FCC agents from the Houston Office conducted field strength measurements and determined the radio transmissions on 90.1 MHz emanating from the Antenna located on the First Property had a field strength of 22,691 microvolts per meter at a distance of 643 meters, which exceeded the limits for operation under Part 15 of the

FCC's rules (the "FCC Rules"), and therefore required a license.[1]

15.     A search of the FCC's databases revealed no evidence of an FCC authorization for the operation of a radio station on frequency 90.1 MHz at that location.   According to FCC records, no authorization was issued to Defendants for the operation of an FM broadcast station on 90.1 MHz in the Austin, Texas area.   Using Travis County, Texas property records, FCC agents from the Houston Office determined that Defendants were the record owners of the First Property.   While at the First Property, FCC agents observed a vehicle bearing a bumper sticker reading "Liberty 90.1 FM" parked in front of the First Property while radio frequency transmissions were detected on 90.1 MHz.   FCC agents from the Houston Office later determined that the vehicle was registered to Defendant M. Rae Nadler-Olenick and used the same address as the First Property.

16.     On September 6, 2013, Stephen P. Lee, Resident Agent, Houston Office ("Agent Lee") issued a Warning of Unlicensed Operation letter (the "Warning Letter") to Defendants, advising them that the operation of the unlicensed radio station on frequency 90.1 MHz from their property violated the Act, that violations of the Act could result in severe penalties, including, but not limited to, monetary fines, seizure of the radio broadcast equipment and criminal sanctions; and that unlicensed operation of the radio station on frequency 90.1 MHz must cease immediately.[2]   The Warning Letter further advised Defendants they had ten (10) days to respond with evidence that they possessed authority to operate the unlicensed radio station or information identifying another operator or other party responsible for the operation of the unlicensed radio station on frequency 90.1 MHz at their property.

17.     On September 16, 2013, the Houston Office received a reply to the Warning Letter from

---

[1]      A copy of the FCC agents' August 12, 2013 Field Notes and Field Strength Report is attached hereto as Exhibit A and incorporated by reference for all purposes.
[2]      A copy of the Warning Letter is attached hereto as Exhibit B and incorporated by reference for all purposes.

Defendants, dated September 12, 2013 (the "Sept. 12 Reply").[3]   In the Sept. 12 Reply, Defendants did not deny ownership of the First Property nor did they deny operation of an unlicensed radio station at the First Property.   Instead, Defendants asserted without any support that they are not subject to the jurisdiction of the FCC.   In the Sept. 12 Reply, Defendants denied the existence of any "commercial nexus," and generally denied the authority of the FCC and the United States to either issue the Warning Letter or take any action based on the alleged violations of the Act.

18.    On November 19, 2013, agents from the Houston Office again confirmed using direction-finding techniques that an unlicensed radio station broadcasting on frequency 90.1 MHz was originating from the Antenna.[4]   The agents again conducted field strength measurements and determined that the radio transmission on frequency 90.1 MHz exceeded the applicable limits on such radio transmissions under Part 15 of the FCC Rules.

## NOTICE OF APPARENT LIABILITY

19.    On February 19, 2014, the FCC Enforcement Bureau issued a Notice of Apparent Liability for Forfeiture (the "NAL") to Defendants in the amount of $15,000.00 for apparent willful and repeated violation of section 301 of the Act, 47 U.S.C. § 301, as a result of operating an FM radio station without a license.   *Walter Olenick and M. Rae Nadler-Olenick,* 29 FCC Rcd 1658 (Enf. Bur. 2014).[5]

20.    The FCC sent a copy of the NAL to Defendants by Certified Mail, return receipt requested, and First Class Mail.   The FCC received a signed Certified Mail return receipt, and the copy sent by First Class Mail was not returned to the FCC.

21.    The NAL ordered Defendants to pay the full amount of the proposed forfeiture, or to

---

[3]        A copy of the Sept. 12 Reply is attached hereto as Exhibit C and incorporated by reference for all purposes.
[4]        A copy of the FCC agents' November 19, 2013, Field Notes and Field Strength Report is attached hereto as Exhibit D and incorporated by reference for all purposes.
[5]        A copy of the NAL is attached hereto as Exhibit E and is incorporated by reference for all purposes.

file a written statement seeking reduction or cancellation of the proposed forfeiture, within thirty (30)

days of the date of the NAL.

22.    On March 10, 2014, the FCC received a response letter dated March 5, 2014 from

Defendants (the "March 5 Reply") wherein Defendants again generally denied the authority of the

FCC and the United States to take any action regarding the NAL.[6]   Defendants did not deny

operation of an unlicensed radio station or ownership of the First Property in the March 5 Reply.

Defendants did admit ownership of the First Property and the Antenna in the March 5 Reply.   "As

blatantly conspicuous to the world, we are the property owners, thus, the owners of the tower."

March 5 Reply at p. 11.   The March 5 Reply also indicated Defendants' disregard for the laws of the

United States as well as their intent to continue in their current course of conduct.   *See* March 5

Reply at 1 ("You look at 'Title 47' and see 'evidence of law.'   We look at the same compilation of

words and see Monte Hall's, 'Let's Make a Deal!', i.e., an offer.   We decline your offer, as we have

from the outset, and we will forever decline your offer.").

**THE FORFEITURE ORDER AND MEMORANDUM AND OPINION AFFIRMING**

23.    On June 3, 2014, the FCC issued a Forfeiture Order in the amount of $15,000.00 against

Defendants for willful and repeated violation of section 301 of the Act, 47 U.S.C. § 301 by operating

a broadcast station without a license.   *Walter Olenick and M. Rae Nadler-Olenick,* Forfeiture Order,

29 FCC Rcd 5901 (Enf. Bur. 2014) ("Forfeiture Order").[7]   The Forfeiture Order explained that the

FCC's jurisdiction extends to all radio transmissions, both intrastate and interstate, and that the FCC's

authority under Section 301 of the Act is not limited to situations where a "commercial nexus" exists,

however such term is defined.

24.    The FCC sent a copy of the Forfeiture Order to Defendants by Certified Mail, return

---

[6]      A copy of the March 5 Reply is attached hereto as Exhibit F and is incorporated by reference for all purposes.
[7]      A copy of the Forfeiture Order is attached hereto as Exhibit G and incorporated by reference for all purposes.

receipt requested, and by First Class Mail.   The FCC received a signed Certified Mail return receipt

and the copy sent by regular First Class Mail was not returned.

25.    On July 1, 2014, the FCC received a response letter dated June 26, 2014 from

Defendants (the "June 26 Reply") wherein Defendants referenced the Forfeiture Order as the "letter

dated June 3, 2014" and disputed the FCC's "claim" for reasons set forth in their earlier

correspondence.[8]   Specifically, Defendants stated that there exists no "commercial nexus" and/or

agreement between the FCC and Defendants that would obligate Defendants to abide by the Act.

The FCC treated the June 26, 2014 Reply as a request for reconsideration of the Forfeiture Order

pursuant to 47 C.F.R. § 1.106.

26.    On August 19, 2014, the FCC issued a Memorandum Opinion and Order (the

"Memorandum") affirming the Forfeiture Order.[9]   The Memorandum further advised Defendants

that, if payment of the forfeiture was not received within thirty (30) days of the release of the

Memorandum, the FCC may refer the case to the United States Department of Justice for

enforcement.

27.    The FCC sent a copy of the Memorandum to Defendants by Certified Mail, return

receipt requested, and by First Class Mail.   Tracking records from the United States Postal Service

indicate that the copy sent by Certified Mail was successfully delivered, and the copy sent by regular

First Class Mail was not returned.

28.    The FCC received a response to the Memorandum from Defendants dated September

8, 2014 (the "September 8 Reply"), wherein Defendants referenced the Memorandum as the "letter

dated August 19, 2014."[10]   The September 8 Reply is largely repetitive of the June 26 Reply and

---

[8]        A copy of the June 26 Reply is attached hereto as Exhibit H and is incorporated by reference for all purposes.
[9]        A copy of the Memorandum is attached hereto as Exhibit I and incorporated by reference for all purposes.
[10]       A copy of the September 8 Reply is attached hereto as Exhibit J and is incorporated by reference for all
purposes.

other correspondence from Defendants, adding only that Defendants disputed ever having submitted a "Petition for Reconsideration."   Defendants also indicated their intent to continue their current conduct, stating that "there's *still* no evidence of any agreement, much less one that obligates either of [the Defendants] to any line of conduct or avoidance of conduct" as described in the FCC's NAL, Forfeiture Order, and Memorandum.   September 8 Reply at 1.

29.    On November 21, 2014, Deputy Associate General Counsel Susan L. Launer informed Defendants of the FCC's intent to refer this matter to the United States Department of Justice in the event the forfeiture amount of $15,000.00 was not paid within thirty (30) days.[11]

30.    On December 3, 2014, the FCC received a response from Defendants dated November 26, 2014 (the "November 26 Reply") wherein Defendants continued their assertion(s) from prior correspondence that the FCC and/or the United States have no enforcement authority over them.[12]

### ENFORCEMENT OF THE MONETARY FORFEITURE

31.    Paragraphs 1 through 30 are hereby incorporated by reference.

32.    Under section 503(b) of the Act, 47 U.S.C. § 503(b), any person who has willfully or repeatedly failed to comply with the provisions of the Communications Act of 1934, as amended, or any rule, regulation, or order issued whom the FCC determines to have willfully or repeatedly failed to comply with the provisions of Chapter 5, Title 47 of the United States Code (including 47 U.S.C. § 301) or any rule, regulation or order issued by the FCC shall be liable to the United States for a forfeiture penalty.

33.    Defendants willfully and repeatedly violated 47 U.S.C. § 301 and 47 C.F.R. § 15.239 by unlawfully operating an unlicensed radio station from the First Property and the Second Property.

---

[11]    A copy of the November 21, 2014 letter is attached hereto as Exhibit K and is incorporated by reference for all purposes.
[12]    A copy of the November 26 Reply is attached hereto as Exhibit L and is incorporated by reference for all purposes.

34.     The FCC properly entered a Forfeiture Order on June 3, 2014, pursuant to 47 U.S.C. §

503(b), in which it assessed a forfeiture penalty in the amount of $15,000 against Defendants, jointly

and severally, for willful and repeated violations of 47 U.S.C. § 301 and 47 C.F.R. § 15.239.

35.     By reason of the foregoing, Defendants are jointly and severally liable to the United

States for a forfeiture penalty pursuant to 47 U.S.C. § 503(b), section 1.80 of the Commission's Rules

("Rules"), 47 C.F.R. § 1.80, and the *Commission's Forfeiture Policy Statement and Amendment of

Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines,* 12 FCC Rcd 17087 (1997), *recon.

denied*, 15 FCC Rcd 303 (1999).   A certificate of forfeiture is attached hereto as Exhibit M.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court:

36.     Order the enforcement of a forfeiture penalty in the amount of $15,000.00, plus all

applicable prejudgment and post-judgment interest, recoverable against Defendants Walter Olenick

and M. Rae Nadler Olenick;

37.     Assess against Defendants all costs incurred by Plaintiff; and

38.     Award such other and additional relief as the Court may deem just and proper.

DATE: August 10, 2018                               Respectfully submitted,

                                                    JOHN F. BASH
                                                    United States Attorney


                                            By:     /s/ *Gary W. Wright*
                                                    Gary W. Wright
                                                    Assistant United States Attorney
                                                    601 N.W. Loop 410, Suite 600
                                                    San Antonio, Texas 78216
                                                    Tel.: (512) 687-0820
                                                    Fax: (512) 916-5854
                                                    Texas Bar No. 24047145
                                                    Email: Gary.Wright@usdoj.gov