# EXHIBIT B



# FEDERAL COMMUNICATIONS COMMISSION
## ENFORCEMENT BUREAU
South Central Region

**Houston Office**
9597 Jones Road, #362
Houston, Texas 77065
(713) 983-9763

September 6, 2013

Walter Olenick and
M. Rae Nadler Olenick
Austin, Texas

## WARNING OF UNLICENSED OPERATION

Case Number: EB-FIELDSCR-13-00010527

On August 12, 2013 agents from this office determined that an unlicensed radio station on 90.1 MHz was operating from your property at 1205 52nd Street, Austin, Texas 78723. Property records show that you are the owner of the property. The Commission's records show that no license was issued for operation of a broadcast station on 90.1 MHz at this location in Austin, Texas.

Radio stations must be licensed by the FCC pursuant to 47 U.S.C. § 301. The only exception to this licensing requirement is for certain transmitters using or operating at a power level or mode of operation that complies with the standards established in Part 15 of the Commission's rules, 47 C.F.R. §§ 15.1 *et seq*. The field strength of the signal on frequency 90.1 MHz was measured at 22,691 microvolts per meter (µV/m) at 643 meters, which exceeded the maximum permitted level of 250 µV/m at 3 meters for non-licensed devices. Thus, this station is operating in violation of 47 U.S.C. § 301.

You are hereby warned that operation of radio transmitting equipment without a valid radio station authorization constitutes a violation of Federal law and could subject the operator to severe penalties, including, but not limited to, substantial monetary fines, *in rem* arrest action against the offending radio equipment, and criminal sanctions including imprisonment. (*see* 47 U.S.C. §§ 301, 401, 501, 503 and 510).

**UNLICENSED OPERATION OF THIS RADIO STATION MUST BE DISCONTINUED IMMEDIATELY.**

You have ten (10) days from the date of this notice to respond with any evidence that you have authority to operate granted by the FCC. If you have information that identifies an operator or other responsible party for the operation of this unlicensed station, you may submit corroborating documentation. You may also describe the steps you have taken to secure the common areas on your property. Your response should be sent to the address in the letterhead and reference the listed case and document number. Under the Privacy Act of 1974, 5 U.S.C. § 552a(e)(3), we are informing you that the Commission's staff will use all relevant material information before it to determine what, if any, enforcement action is required to ensure your compliance with FCC Rules. This will include any information that you disclose in your reply.

Exhibit

B

You may contact this office if you have any questions.

Stephen P. Lee
Resident Agent
Houston Office

Attachments:
    Excerpts from the Communications Act of 1934, As Amended
    Enforcement Bureau, "Inspection Fact Sheet," March 2005

EXCERPTS FROM THE COMMUNICATIONS ACT OF 1934, AS AMENDED

Section 301.   License for Radio Communication or Transmission of Energy

It is the purpose of this Act, among other things, to maintain the control of the United States over all the channels of radio transmission; and to provide for the use of such channels, but not the ownership thereof, by persons for limited periods of time, under licenses granted by Federal authority, and no such license shall be construed to create any right, beyond the terms, conditions, and periods of the license.  No person shall use or operate any apparatus for the transmission of energy or communications or signals by radio (a) from one place in any State, Territory, or possession of the United States or in the District of Columbia to another place in the same State, Territory, possession, or District; or (b) from any State, Territory, or possession of the United States, or from the District of Columbia to any other State, Territory, or possession of the United States; or (c) from any place in any State, Territory, or possession of the United States, or in the District of Columbia, to any place in any foreign country or to any vessel; or (d) within any State when the effects of such use extend beyond the borders of said State, or when interference is caused by such use or operation with the transmission of such energy, communications, or signals from within said State to any place beyond its borders, or from any place beyond its borders to any place within said State, or with the transmission or reception of such energy, communications, or signals from and/or to places beyond the borders of said State; or (e) upon any vessel or aircraft of the United States (except as provided in section 303(t); or (f) upon any other mobile stations within the jurisdiction of the United States, except under and in accordance with this Act and with a license in that behalf granted under the provisions of this Act.

Section 303.   General Powers of The Commission

Except as otherwise provided in this Act, the Commission from time to time, as public convenience, interest, or necessity requires shall-

...

(n) Have authority to inspect all radio installations associated with stations required to be licensed by any Act, or which the Commission by rule has authorized to operate without a license under Section 307(e)(1), or which are subject to the provisions of any Act, treaty, or convention binding on the United States, to ascertain whether in construction, installation, and operation they conform to the requirements of the rules and regulations of the Commission, the provision of any Act, the terms of any treaty or convention binding on the United States and the conditions of the license or other instrument of authorization under which they are constructed, installed, or operated.

Section 333.   Willful or Malicious Interference

No person shall willfully or maliciously interfere with or cause interference to any radio communications of any station licensed or authorized by or under this Act or operated by the United States Government.

Section 501.   General Penalty

Any person who willfully and knowingly does or causes or suffers to be done any act, matter, or thing, in this Act prohibited or declared to be unlawful, or who willfully or knowingly omits or fails to do any act, matter, or thing in this Act required to be done, or willfully and knowingly causes or suffers such omission or failure, shall, upon conviction thereof, be punished for such offense, for which no penalty (other than a forfeiture) is provided in this Act, by a fine of not more than $10,000 or by imprisonment for a term not exceeding one year, or both; except that any person, having been once convicted of an offense punishable under this section, who is subsequently convicted of violating any provision of this Act punishable under this section, shall be punished by a fine of not more than $10,000 or by imprisonment for a term not exceeding two years, or both.

Section 503.   Forfeitures in Cases of Rebates and Offsets

...

(b)(1) Any person who is determined by the Commission ... to have—

...

(B) willfully or repeatedly failed to comply with any of the provisions of this Act or of any rule, regulation, or order issued by the Commission under this Act or under any treaty, convention, or other agreement to which the United States is a party and which is binding on the United States;

...

shall be liable to the United States for a forfeiture penalty.

....

Section 510.   Forfeiture of Communications Devices

(a)  Any electronic, electromagnetic, radio frequency, or similar device, or component thereof, used, sent, carried, manufactured, assembled, possessed, offered for sale, sold or advertised with willful and knowing intent to violate Section 301 or 302, or rules prescribed by the Commission under such sections, may be seized and forfeited to the United States.

*Enforcement Bureau*

Inspection FACT SHEET

MARCH 2005

The Federal Communications Commission has the authority to inspect most radio installations. Responsibility for conducting these inspections generally rests with the Enforcement Bureau's Field Agents. In the course of fulfilling this responsibility, the Agents often receive questions concerning the authority and procedure under which they are working. The Enforcement Bureau has assembled this general information sheet to address some of the more commonly asked questions concerning inspections and to clarify why and how inspections occur.

## INSPECTION AUTHORITY

Section 303(n) of the Communications Act of 1934, as amended, (Act) gives the Federal Communications Commission the "authority to inspect all radio installations associated with stations required to be licensed by any Act, or which the Commission by rule has authorized to operate without a license under section 307(e)(1), or which are subject to the provisions of any Act, treaty, or convention binding on the United States . . ." 47 U.S.C. 303(n) Both Section 303(n) of the Act, and the Rules which implement the Act, grant the right to inspect most radio operations to the Commission, and by delegated authority to the Commission's Bureaus and agents. The Enforcement Bureau conducts inspections of radio installations as part of the Bureau's function to "[e]nforce the Commission's Rules and Regulations." 47 CFR 0.111(a).

Both licensees and non-licensees must allow an FCC Agent to inspect their radio equipment. Along with the privilege of possessing a license come responsibilities such as knowing the applicable rules, including allowing the station to be inspected. Licensees should be aware of the Commission's right to inspect. Equally important, FCC Agents are allowed to inspect the radio equipment of non-licensees. Non-licensees include those individuals or entities operating in accordance with Part 15 of the Rules. Non-licensees also include those who should have a license to operate their equipment but have not obtained a license and are operating without authority.

Radio equipment is generally used in a commercial setting (e.g., commercial broadcast station, land mobile station, commercial delivery service) or a residential setting (e.g., amateur, citizen's band (CB) radio). Home-based businesses may also operate radio stations. This fact sheet addresses inspection of radio stations in both the commercial and residential settings.

1

## Frequently Asked Questions Related to Residential Inspection of Radio Equipment by the FCC

Q: *Why must operators of radio frequency devices allow the FCC to inspect their equipment?*

A: The Commission must ascertain essential facts pertaining to the operation of a station which may be vital to the resolution of a number of questions, including interference problems involving public safety. For this reason, the FCC must be able to check all covered equipment that have the potential to emit radio frequencies. Section 303(n) of the Communications Act gives the FCC this authority.

Q: *What happens if I do not allow the FCC agent to inspect my equipment?*

A: Failure to allow inspection forecloses the opportunity to resolve the problem. Thus, refusal to allow inspection is a serious challenge to the Commission's authority to inspect radio stations and is a violation of the Rules. Such a refusal may lead to revocation of a license, maximum monetary forfeiture, or other Commission sanctions.

Q: *The FCC Agent standing at my door does not have a search warrant, so I don't have to let him in, right?*

A: Wrong. Search warrants are needed for entry involving criminal matters. One of the requirements as a licensee, or non-licensee subject to the Commission's Rules, is to allow inspection of your radio equipment by FCC personnel. Whether you operate an amateur station or any other radio device, your authorization from the Commission comes with the obligation to allow inspection. Even radio stations licensed under a "blanket" rule or approval, such as Citizen's Band (CB) Radio, are subject to the Commission's inspection requirement.

Q: *Well then, if I am a low-power broadcaster and don't have an FCC license, they need a search warrant, right?*

A: Wrong again. The FCC agents have the authority to inspect all radio equipment; even if you do not have a license, the FCC can still inspect your equipment. Section 303(n) of the Act gives the FCC the right to inspect all "stations required to be licensed." This language covers your low-power radio station. The FCC agents are inspecting the equipment, not searching your house.

Q: *Okay, I understand now why the Agent doesn't need a search warrant, but how do I know what the Agent will do next?*

A: Once you open the door, the agents should show their FCC identification card and badge, identify themselves by name and agency, and should state the purpose of the visit. They then should request permission to inspect the radio station. The agents may also ask

2

to see records such as licenses for the station or operator. Agents, however, should never open private cabinets, drawers, or other private items in the search for license documents.

Q: *Can the agents come to my residence at any hour of the day or night to conduct an inspection?*

A: FCC Agents inspect during the hours of operation. If you are operating your station during late or unusual hours you cannot use the time element as justification for refusing to permit an inspection at that time. You cannot avoid an inspection by electing to operate only during late or unusual hours.

Q: *The FCC Agent said that I had to allow inspection of my radio station without unnecessary delay. What does "without unnecessary delay" mean?*

A: Immediate on-the-spot inspections are generally necessary. In most cases, any delay can result in changed conditions of the transmitting equipment or its operation, adversely affecting the efficacy of the inspections. For that reason, Agents cannot return at a later time to accommodate the operator, cannot wait for the operator to make any adjustments to the equipment, and cannot spend time repeating the reasons for the inspection.

Q: *Why don't the FCC's agents have to make an appointment with me to inspect my equipment?*

A: The Commission has no means of determining whether a station is being operated as licensed except through immediate on-the-spot inspection. To establish the amount of operating power of a station, the input power of the last radio stage of the transmitter must be actually measured with test equipment. To delay an inspection for the convenience of a licensee would allow the licensee time in which to modify or restore the transmitter to its licensed condition, thus permitting the licensee to avoid detection. This same theory also applies in the case of whether a station is operating with an unapproved type of transmitter.

Q: *What can happen to me if the agent determines that I am using illegal or unauthorized equipment?*

A: There are several different ways that this situation can be handled. You may volunteer to surrender the equipment to the agent who will then destroy it under FCC procedure. If you choose not to surrender the equipment, the FCC can bring a proceeding against you to take the equipment. This is known as an in rem (i.e., property) forfeiture proceeding. Additionally, if you choose not to surrender the equipment, you can be issued a civil monetary forfeiture penalty. See 1997 Forfeiture Policy Statement 12 FCC Rcd 17087(1997).

Q: *Am I required to surrender any illegal or unauthorized equipment to the agent?*

A: No, surrender is voluntary. However, it is the best way to avoid a large monetary forfeiture.

Q: Is the inspection procedure for various services different? Is the procedure different for licensees and non-licensees?

A: The inspection procedure is essentially the same for all of the services. Similarly, the inspection procedure is the same for licensed and non-licensed stations. This is because the FCC has the right to inspect ALL covered radio equipment.

## Frequently Asked Questions for the Business Environment

Q: *FCC Agents arrived to inspect the radio at my office. My boss isn't here. Should I call my boss to be present for the inspection?*

A: You may call your boss if you wish. If the company is open for business, however, the inspection should be permitted regardless of whether your boss is present. This is not an acceptable reason to delay an inspection.

Q: *My boss didn't tell me anyone would come by to inspect our radio so I don't have to let the FCC inspectors in, right?*

A: Wrong. The licensee is responsible for knowing the rules and those include the FCC's right to inspect. Because the employer is responsible for the acts of the employee, it is up to the licensee-employer to inform its staff as to its responsibilities concerning the operation of the radio station.

Q: *I run a small daytime only AM station. Do I have to allow the agents to inspect the station late at night?*

A: The FCC inspects during hours of operation. Thus, a day time station, by definition, should not be operating at night. If FCC agents determine that radio signals are emitting from the daytime station during night time hours, however, an inspection must be allowed if requested by an FCC agent.

Q: *How do I know that these are really agents from the FCC?*

A: FCC Agents have a badge and credentials with their names and the FCC seal which they will present to you when requesting your permission to inspect. If you would like to further confirm their identity, you may call the FCC's Communications and Crisis Management Center in Washington, D.C., at (202)418-1122. It is open 24 hours a day, 365 days a year.

Q: *If an agent is testing my FCC authorized equipment and the equipment breaks or malfunctions during the tests, is the FCC liable?*

A: If the agent was negligent, you may have a claim under the Federal Tort Claims Act (FTCA) to recover damages for your property. The FCC will make the initial determination whether the agent was negligent.

*Q: Can I have my attorney present during the inspection? Can I make the agent wait to start the inspection until my attorney is present?*

A: You may have your attorney present during the inspection; however, there is no constitutional right to have your attorney present. Therefore, you may not make the agent wait until your attorney arrives. Making the agent wait for your attorney conflicts with the "unnecessary delay" requirement discussed earlier.