# EXHIBIT E

**Federal Communications Commission**                    DA 14-195

**Before the**
**Federal Communications Commission**
**Washington, D.C. 20554**

| | |
|---|---|
| In the Matter of | ) |
| | ) |
| Walter Olenick and M. Rae Nadler-Olenick | ) File No.: EB-FIELDSCR-13-00010527 |
| | ) NAL/Acct. No.: 201432540001 |
| Austin, Texas | ) FRN: 0023366628 |

## NOTICE OF APPARENT LIABILITY FOR FORFEITURE

**Adopted: February 19, 2014**                    **Released: February 19, 2014**

By the Resident Agent, Houston Office, South Central Region, Enforcement Bureau:

### I.    INTRODUCTION

1.    In this Notice of Apparent Liability for Forfeiture (NAL), we find that Walter Olenick and M. Rae Nadler-Olenick apparently willfully and repeatedly violated Section 301 of the Communications Act of 1934, as amended (Act),[1] by operating an unlicensed radio station on the frequency 90.1 MHz in Austin, Texas. We conclude that Mr. and Mrs. Olenick are apparently jointly and severally liable for a forfeiture in the amount of fifteen thousand dollars ($15,000).

### II.    BACKGROUND

2.    On August 12, 2013, in response to a complaint about a possible unlicensed station operating on 90.1 MHz, agents from the Enforcement Bureau's Houston Office (Houston Office) used direction-finding techniques to locate the source of radio frequency transmissions on the frequency 90.1 MHz to an antenna atop an approximately 50 feet tall tower mounted to the side of an apartment building in Austin, Texas. According to Travis County Texas property records, the apartment building is owned by Mr. and Mrs. Olenick. The agents observed a coaxial cable running from the antenna into a room believed to be a non-residential room, such as a utility or maintenance room.[2] The agents observed a vehicle, later determined to be registered to Mrs. Olenick, with a bumper sticker stating "Liberty 90.1 FM," parked in front of the apartment building while the station was on the air. The agents conducted field strength measurements and determined that the signal on 90.1 MHz exceeded the limits for operation under Part 15 of the Commission's rules (Rules),[3] and therefore required a license. According to the Commission's records, no authorization has been issued to Mr. or Mrs. Olenick, or to anyone else, for the operation of an FM broadcast station on 90.1 MHz at this location in Austin, Texas.

---

[1] 47 U.S.C. § 301.

[2] The agents believed the room to be a maintenance or utility room because the unit had a brown door while all of the other apartments in the building had white doors. In addition, unlike the other apartment units, there was no window next to the front door of the room. However, the agents have been unable to confirm this information with Mr. and Mrs. Olenick.

[3] Part 15 of the Rules sets out the conditions and technical requirements under which certain radio transmission devices may be used without a license. In relevant part, Section 15.239 of the Rules provides that non-licensed broadcasting in the 88-108 MHz band is permitted only if the field strength of the transmission does not exceed 250 µV/m at three meters. 47 C.F.R. § 15.239.

Exhibit
E

3.      On September 6, 2013, the Houston Office issued Mr. and Mrs. Olenick a warning letter, which advised them that the operation of an unlicensed radio station on the frequency 90.1 MHz from their property violated the Act.[4]  The warning also instructed Mr. and Mrs. Olenick to describe the steps taken to secure the common areas of their property.  On September 16, 2013, the Houston Office received a reply from Mr. and Mrs. Olenick, which did not deny that they owned the apartment building or operated an unlicensed radio station from the apartment building.[5]  With respect to the common areas of the building, the response stated that the agent did not have "permission or consent to enter" the premises.[6]  They also stated that because they had no commercial nexus with "your company," *i.e.*, the Commission, they did not consent, directly or by any implication, to the Commission's policies, procedures, or jurisdiction.[7]  They also implied that they do not consider themselves subject to the laws of the United States, because they stated they expect any future communications to come from the International Bureau only after a "treaty" to which they are "signators" is signed.[8]

4.      On November 19, 2013, agents from the Houston Office again used direction-finding techniques and confirmed that the unlicensed station on 90.1 MHz was still in operation from the antenna mounted atop a tower attached to the Olenick's apartment building in Austin, Texas.  The agents again conducted field strength measurements and determined that the signals on 90.1 MHz exceeded the limits for operation without a license under Part 15 of the Rules.  The agents also observed Mrs. Olenick's vehicle, with a bumper sticker stating "Liberty 90.1 FM," parked in front of the apartment building while the station was on the air.  The agents consulted Texas Department of Motor Vehicle information and determined that Mrs. Olenick listed an apartment in the apartment building as her home address on her vehicle's registration.

## III.   DISCUSSION

5.      Section 503(b) of the Act provides that any person who willfully fails to comply substantially with the terms and conditions of any license, or willfully fails to comply with any of the provisions of the Act or of any rule, regulation, or order issued by the Commission thereunder, shall be liable for a forfeiture penalty.[9]  Section 312(f)(1) of the Act defines "willful" as the "conscious and deliberate commission or omission of [any] act, irrespective of any intent to violate" the law.[10]  The legislative history to Section 312(f)(1) of the Act clarifies that this definition of willful applies to both Sections 312 and 503(b) of the Act,[11] and the Commission has so interpreted the term in the Section 503(b) context.[12]  The Commission

---

[4] *Walter Olenick and M. Rae Nadler-Olenick,* Warning of Unlicensed Operation (Sept. 6, 2013) (on file in EB-FIELDSCR-13-00010527).

[5] Letter from Walter Olenick and M. Rae Nadler-Olenick to Stephen P. Lee, Resident Agent, Houston Office, South Central Region, Enforcement Bureau, at 1–2 (Sept. 12, 2013) (on file in EB-FIELDSCR-13-00010527).

[6] *Id.*

[7] *Id.* at 1.

[8] *Id.* at 1–2.

[9] 47 U.S.C. § 503(b).

[10] 47 U.S.C. § 312(f)(1).

[11] H.R. Rep. No. 97-765, 97th Cong. 2d Sess. 51 (1982) ("This provision [inserted in Section 312] defines the terms 'willful' and 'repeated' for purposes of section 312, and for any other relevant section of the act (e.g., Section 503) .... As defined[,] . . . 'willful' means that the licensee knew that he was doing the act in question, regardless of whether there was an intent to violate the law.").

[12] *See, e.g., Southern California Broadcasting Co.,* Memorandum Opinion and Order, 6 FCC Rcd 4387, 4388, para. 5 (1991), *recons. denied,* 7 FCC Rcd 3454 (1992).

may also assess a forfeiture for violations that are merely repeated, and not willful.[13] The term "repeated" means the commission or omission of such act more than once or for more than one day.[14]

### A. Unlicensed Broadcast Operations

6. Section 301 of the Act states that no person shall use or operate any apparatus for the transmission of energy or communications or signals by radio within the United States, specifically "from one place in any State, Territory, or possession of the United States or in the District of Columbia to another place in the same State, Territory, possession, or District," or from one place within a State to another State, except under and in accordance with the Act and with a license granted under the provisions of the Act.[15] Thus, Section 301 of the Act explicitly sets forth the Commission's jurisdiction over all radio transmissions, both interstate and intrastate.[16] For the purposes of Section 301, the word "operate" has been interpreted to mean both the technical operation of the station as well as "the general conduct or management of a station as a whole, as distinct from the specific technical work involved in the actual transmission of signals."[17] In other words, the use of the word "operate" in Section 301 captures not just the "actual, mechanical manipulation of radio apparatus,"[18] but also operation of a radio station generally.[19] To determine whether an individual is involved in the general conduct or management of the station, we can consider whether such individual exercises control over the station, which the Commission has defined to include "any means of actual working control over the operation of the [station] in whatever manner exercised."[20]

7. We find that the record evidence in this case is sufficient to establish that Mr. and Mrs. Olenick violated Section 301 of the Act. As the record shows, on August 12 and November 19, 2013, agents from the Houston Office determined that an unlicensed radio station on the frequency 90.1 MHz was operating from Mr. and Mrs. Olenick's apartment building in Austin, Texas. The radio signals were emanating from an antenna mounted atop a large tower attached to the apartment building, and cables ran from that antenna into what appeared to be a non-residential room, such as a utility or maintenance room.

---

[13] *See, e.g., Callais Cablevision, Inc.*, Notice of Apparent Liability for Monetary Forfeiture, 16 FCC Rcd 1359, 1362, para. 10 (2001) (*Callais Cablevision, Inc.*) (proposing a forfeiture for, *inter alia*, a cable television operator's repeated signal leakage).

[14] Section 312(f)(2) of the Act, 47 U.S.C. § 312(f)(2), which also applies to violations for which forfeitures are assessed under Section 503(b) of the Act, provides that "[t]he term 'repeated', when used with reference to the commission or omission of any act, means the commission or omission of such act more than once or, if such commission or omission is continuous, for more than one day." *See Callais Cablevision, Inc.*, 16 FCC Rcd at 1362, para. 9.

[15] 47 U.S.C. § 301.

[16] *See Joseph Frank Ptak*, Decision, 14 FCC Rcd 9317, 9320, para. 13 (1999) (affirming the Commission's jurisdiction over unauthorized radio transmissions in Texas and all unauthorized intrastate transmissions; *see also U.S. v. Butterfield*, 91 F.Supp.2d 704 (D.Vt. 2000) (holding that all persons who intend to broadcast by radio must have an FCC license, whether or not such broadcasts are intended to be interstate or intrastate).

[17] *Campbell v. United States*, 167 F.2d 451, 453 (5th Cir. 1948) (comparing the use of the words "operate" and "operation" in Sections 301, 307, and 318 of the Act, and concluding that the word "operate" as used in Section 301 of the Act means both the technical operation of the station as well as the general conduct or management of the station); *see Daniel K. Roberts*, Memorandum Opinion and Order, DA 14-167, at 5, para. 9 (Enf. Bur. Feb 7, 2014).

[18] *Id.*

[19] *Id.*

[20] *See Revision of Rules and Policies for the Direct Broadcast Satellite Service*, Report and Order, 11 FCC Rcd 9712, 9747, para. 91 (1995), *recons. denied, DIRECTV, Inc. v. FCC*, 110 F.3d 816 (D.C. Cir. 1997).

Upon receipt of a written warning, Mr. and Mrs. Olenick did not deny operating the unlicensed station and exercised control over the "common areas" of the building by explicitly denying the agent permission to enter. Mr. and Mrs. Olenick own and apparently reside in the apartment building. Given the size of the antenna tower, it is unlikely that it could have been erected without their knowledge. Another person also operating the unlicensed station does not lessen Mr. and Mrs. Olenick's culpability; because they allowed the antenna, tower, and transmitting equipment to remain on their property, they can be deemed to have actual control over the unauthorized station's operations.[21] Therefore, based on the evidence before us, we find that Mr. and Mrs. Olenick willfully and repeatedly violated Section 301 of the Act by operating an unlicensed radio station.

8.      Mr. and Mrs. Olenick also appear to question the Commission's jurisdiction over this matter, because they claim that they have no commercial nexus with the Commission. As stated above, Section 301 of the Act explicitly sets forth the Commission's jurisdiction over all radio transmissions, both interstate and intrastate.[22] Thus, contrary to the Olenicks' assertion, the Commission does not lack jurisdiction over the use of radio transmitting equipment within the State of Texas.

   **B.      Proposed Forfeiture**

9.      Pursuant to the Commission's *Forfeiture Policy Statement* and Section 1.80 of the Rules, the base forfeiture amount for operations without an instrument of authorization for the service is $10,000.[23] In assessing the monetary forfeiture amount, we must also take into account the statutory factors set forth in Section 503(b)(2)(E) of the Act, which include the nature, circumstances, extent, and gravity of the violations, and with respect to the violator, the degree of culpability, any history of prior offenses, ability to pay, and other such matters as justice may require.[24] Prior to November 19, 2013, Mr. and Mrs. Olenick received a written warning from the Houston Office advising them that operating an unlicensed radio station violated the Act.[25] Mr. and Mrs. Olenick acknowledged receipt of the warning. The fact that Mr. and Mrs. Olenick nevertheless operated an unlicensed station demonstrates a deliberate disregard for the Commission's requirements and authority. Thus, we find that an upward adjustment in the forfeiture amount of $5,000 is warranted.[26] Applying the *Forfeiture Policy Statement*, Section 1.80 of the Rules, and the statutory factors to the instant case, we conclude that Mr. and Mrs. Olenick are apparently jointly and

---

[21] *See Glen Rubash*, Forfeiture Order, 28 FCC Rcd 15922, 15924, para. 5 (Enf. Bur. 2013) ("[L]iability for unlicensed operation may be assigned to any individual taking part in the operation of the unlicensed station, regardless of who else may be responsible for the operation."); *Durrant Clarke*, Notice of Apparent Liability for Forfeiture, 26 FCC Rcd 6982 (Enf. Bur. 2011) (finding the fact that someone else may have been involved in the operation of unlicensed station does not lessen culpability); *Jean L. Senatus*, Forfeiture Order, 20 FCC Rcd 14418 (Enf. Bur. 2005) ("The Act does not provide that a forfeiture can be assessed only where we are able to identify all individuals involved in the operation of an unlicensed station.").

[22] *See Joseph Frank Ptak*, 14 FCC Rcd at 9320, para. 13 (1999); *Butterfield*, 91 F.Supp.2d 704.

[23] *The Commission's Forfeiture Policy Statement and Amendment of Section 1.80 of the Rules to Incorporate the Forfeiture Guidelines*, Report and Order, 12 FCC Rcd 17087 (1997) (*Forfeiture Policy Statement*), *recons. denied*, 15 FCC Rcd 303 (1999); 47 C.F.R. § 1.80.

[24] 47 U.S.C. § 503(b)(2)(E).

[25] *Walter Olenick and M. Rae Nadler-Olenick*, Warning of Unlicensed Operation (Sept. 6, 2013) (on file in EB-FIELDSCR-13-00010527).

[26] *See Robert Brown*, Notice of Apparent Liability for Forfeiture, 25 FCC Rcd 13740 (Enf. Bur. 2010) (upwardly adjusted proposed forfeiture by $5,000 because violator operated an unlicensed radio station after receiving multiple warnings that such action violated the Act and Rules); *Nounoune Lubin*, Notice of Apparent Liability for Forfeiture, 25 FCC Rcd 12654 (Enf. Bur. 2010) (upwardly adjusted proposed forfeiture by $10,000 because violator operated an unlicensed radio station on multiple days after receiving notice that such action violated the Act and Rules).

severally liable for a total forfeiture in the amount of fifteen thousand dollars ($15,000) for operating an unlicensed radio station.

## IV.    ORDERING CLAUSES

10.    Accordingly, **IT IS ORDERED** that, pursuant to Section 503(b) of the Act, and Sections 0.111, 0.204, 0.311, 0.314, and 1.80 of the Rules, Walter Olenick and M. Rae Nadler-Olenick are hereby **NOTIFIED** of this **APPARENT JOINT AND SEVERAL LIABILITY FOR A FORFEITURE** in the amount of fifteen thousand dollars ($15,000) for violations of Section 301 of the Act.[27]

11.    **IT IS FURTHER ORDERED** that, pursuant to Section 1.80 of the Rules, within thirty (30) calendar days of the release date of this Notice of Apparent Liability for Forfeiture, Walter Olenick and M. Rae Nadler-Olenick **SHALL PAY** the full amount of the proposed forfeiture or **SHALL FILE** a written statement seeking reduction or cancellation of the proposed forfeiture.

12.    Payment of the forfeiture must be made by check or similar instrument, wire transfer, or credit card, and must include the NAL/Account Number and FRN referenced above. Mr. and Mrs. Olenick shall also send electronic notification on the date said payment is made to SCR-Response@fcc.gov. Regardless of the form of payment, a completed FCC Form 159 (Remittance Advice) must be submitted.[28]  When completing the FCC Form 159, enter the Account Number in block number 23A (call sign/other ID) and enter the letters "FORF" in block number 24A (payment type code). Below are additional instructions you should follow based on the form of payment you select:

- Payment by check or money order must be made payable to the order of the Federal Communications Commission. Such payments (along with the completed Form 159) must be mailed to Federal Communications Commission, P.O. Box 979088, St. Louis, MO 63197-9000, or sent via overnight mail to U.S. Bank – Government Lockbox #979088, SL-MO-C2-GL, 1005 Convention Plaza, St. Louis, MO 63101.

- Payment by wire transfer must be made to ABA Number 021030004, receiving bank TREAS/NYC, and Account Number 27000001. To complete the wire transfer and ensure appropriate crediting of the wired funds, a completed Form 159 must be faxed to U.S. Bank at (314) 418-4232 on the same business day the wire transfer is initiated.

- Payment by credit card must be made by providing the required credit card information on FCC Form 159 and signing and dating the Form 159 to authorize the credit card payment. The completed Form 159 must then be mailed to Federal Communications Commission, P.O. Box 979088, St. Louis, MO 63197-9000, or sent via overnight mail to U.S. Bank – Government Lockbox #979088, SL-MO-C2-GL, 1005 Convention Plaza, St. Louis, MO 63101.

13.    Any request for making full payment over time under an installment plan should be sent to: Chief Financial Officer—Financial Operations, Federal Communications Commission, 445 12th Street, S.W., Room 1-A625, Washington, D.C. 20554.[29]  If you have questions regarding payment procedures, please contact the Financial Operations Group Help Desk by phone, 1-877-480-3201, or by e-mail, ARINQUIRIES@fcc.gov.

---

[27] 47 U.S.C. §§ 301, 503(b); 47 C.F.R. §§ 0.111, 0.204, 0.311, 0.314, 1.80.

[28] An FCC Form 159 and detailed instructions for completing the form may be obtained at http://www.fcc.gov/Forms/Form159/159.pdf.

[29] *See* 47 C.F.R. § 1.1914.

14.     The written statement seeking reduction or cancellation of the proposed forfeiture, if any, must include a detailed factual statement supported by appropriate documentation and affidavits pursuant to Sections 1.16 and 1.80(f)(3) of the Rules.[30]  Mail the written statement to Federal Communications Commission, Enforcement Bureau, South Central Region, Houston Office, 9597 Jones Road #362, Houston, Texas 77065 and include the NAL/Acct. No. referenced in the caption. Mr. and Mrs. Olenick also shall e-mail the written response to SCR-Response@fcc.gov.

15.     The Commission will not consider reducing or canceling a forfeiture in response to a claim of inability to pay unless the petitioner submits: (1) federal tax returns for the most recent three-year period; (2) financial statements prepared according to generally accepted accounting principles (GAAP); or (3) some other reliable and objective documentation that accurately reflects the petitioner's current financial status. Any claim of inability to pay must specifically identify the basis for the claim by reference to the financial documentation submitted.

16.     **IT IS FURTHER ORDERED** that a copy of this Notice of Apparent Liability for Forfeiture shall be sent by both Certified Mail, Return Receipt Requested, and First Class Mail to Walter Olenick and M. Rae Nadler-Olenick at their address of record.

FEDERAL COMMUNICATIONS COMMISSION

Stephen P. Lee
Resident Agent
Houston Office
South Central Region
Enforcement Bureau

---

[30] 47 C.F.R. §§ 1.16, 1.80(f)(3).