IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | No. 1:18-CV-00675-LY |
| ex rel. AJIT PAI, Chair, | § | |
| FEDERAL COMMUNICATIONS | § | |
| COMMISSION (FCC), | § | |
| a public, charitable trust, and | § | NO CONSENT TO ARBITRATION |
| a non-beneficiary, | § | |
| | § | |
| Plaintiff, | § | NO CONSENT TO NON- |
| | § | JUDICIAL DECISION-MAKING |
| v. | § | INCLUDING MAGISTRATE |
| | § | PARTICIPATION |
| WALTER OLENICK, and | § | |
| M. RAE NADLER-OLENICK, | § | |
| non-fiduciaries, | § | |
| | § | |
| Respondents. | § | |

## RESPONDENTS' ORIGINAL COUNTERCLAIM

COME NOW WALTER OLENICK and M. RAE NADLER-OLENICK, husband
and wife, THE OLENICKS, Respondents, who assert their Original Counterclaim
against USOA as follows:

USOA insists on a pleading, so how about this for starters.

### Table of Contents

RESPONDENTS' ORIGINAL COUNTERCLAIM ............................................................1

Counter-Claim 1 – Frivolous Suit. .................................................................................3

Counter-Claim 2 – Violation of Right Not to Contract / Agree / Consent – WALTER
OLENICK. ......................................................................................................................4

Counter-Claim 3 – Violation of Right Not to Contract / Agree / Consent – M. RAE
NADLER-OLENICK. .......................................................................................................7

**No commercial nexus**

Counter-Claim 4 –  Violation of Right of Association –  WALTER OLENICK. ...................9

Counter-Claim 5 –  Violation of Right of Association –  M. RAE NADLER-OLENICK. ...11

Counter-Claim 6 –  Violation of Right to Contract –  WALTER OLENICK......................13

Counter-Claim 7 –  Violation of Right to Contract –  M. RAE NADLER-OLENICK.........16

Regarding Medium of Exchange...................................................................................18

Request for Relief........................................................................................................18

§ 1746 Declaration – WALTER OLENICK ....................................................................19

§ 1746 Declaration – M. RAE NADLER-OLENICK .......................................................20

CERTIFICATE OF SERVICE.......................................................................................21

**No commercial nexus**

## Counter-Claim 1 –
## Frivolous Suit.

1.  USOA, as Plaintiff, has waived immunity.

2.  USOA's suit asserts semantics and conclusions of law, no material facts.

3.  USOA has no facts to assert that associate THE OLENICKS, or either of them, with ownership of a **frequency**.

    A.  Ownership of the land is an extremely far cry from ownership of the **frequency** created by a/the party renting the apartment from which come the wires to an antenna mounted on the tower.

    B.  Ownership of the building on the land is an extremely far cry from ownership of the **frequency** created by a/the party renting the apartment from which come the wires to an antenna mounted on the tower.

    C.  Ownership of the tower on the land on which the antenna is placed is an extremely far cry from ownership of the **frequency** created by a/the party renting the apartment from which come the wires to an antenna mounted on the tower.

    D.  In 2011, *seven years* ago, this very court declared and confirmed **frequency** ownership interests, and THE OLENICKS *were not* on that list.

    E.  In 2013, *five years* ago, when the FCC first contacted THE OLENICKS, the FCC confessed, in writing, having no commercial nexus with THE OLENICKS.

4.  USOA has not asserted and can never assert, truthfully, *any* facts that in any way, shape, manner, or form, associate THE OLENICKS, or either of them, with ownership of *any* **frequency**, much less 90.1 FM, in 2013, or at any other time.

---

**No commercial nexus**

**5.** USOA, if it were an individual, would be liable for filing a totally groundless, frivolous lawsuit.

**6.** For USOA's totally and completely frivolous and groundless suit, THE OLENICKS demand the amount USOA demands. Fifteen thousand dollars ($15,000), to be paid by either the party/client, the attorney(s) of Record, or both, jointly and severally.

### Counter-Claim 2 –
### Violation of Right Not to Contract / Agree / Consent –
### WALTER OLENICK.

**7.** USOA, as Plaintiff, has waived immunity.

**8.** The right ***not*** to contract / agree / consent is a fundamental right, recognized both in the laws of Texas and of the United States.

**9.** USOA has no more facts connecting THE OLENICKS with ownership of a **frequency** now than they (or FCC) had in 2013 when the FCC was prompted to "investigate" the competition in Austin regarding the ownership and use of 90.1 FM.

**10.** When this started, in 2013, THE OLENICKS refused to consent to being regulated by the FCC.

**11.** Throughout the several efforts, whether by FCC or USOA, to try to entice THE OLENICKS to consent to being regulated, THE OLENICKS have repeatedly refused to consent.

**12.** THE OLENICKS even requested from the FCC what the basis was for the FCC's assertion of a commercial nexus. The FCC's Response? *See* attached. In

---

ORIGINAL COUNTER-CLAIM (THE OLENICKS)                          4
**No commercial nexus**

short, no commercial nexus, as confessed by the FCC from the start.

13. Has USOA stopped harassing, intimidating, and/or retaliating against THE OLENICKS? Nope. USOA, directly and on behalf of the FCC, has repeatedly contacted THE OLENICKS regarding the matter, including the use of the U.S. Postal Service, repeatedly asserted the claims of the nature documented in the Original Complaint, and has now filed this totally and completely frivolous and groundless lawsuit, all over a claim of $15K for which USOA (FCC) *never* had a lawful, competent, legit claim.

14. THE OLENICKS have at all times asserted their right *not* to contract / agree / consent to being regulated by the FCC. THE OLENICKS are not now claiming, and have never claimed, any ownership interest, thus use, of a **frequency**.

15. Relentlessly, and even despite the FCC's confession, from the start, of there being no commercial nexus, USOA has continued its barrage of frivolous and groundless charges against THE OLENICKS, into the teeth of THE OLENICKS' affirmative assertions of their right(s) *not* to contract / agree / consent regarding being regulated by the FCC over ownership and use of a **frequency**.

16. As detailed in THE OLENICKS' Rule 12 Motions, even USOA *and this very court* declared, in 2011, that the ownership of 90.1 FM was not in any way, shape, manner, or form owned, in whole or even in part, by THE OLENICKS.

17. Yet, here's this suit.

18. For USOA's intentional harassment, intimidation, and/or retaliation against WALTER OLENICK, for his repeated, and necessarily so, assertion of his right *not*

---

**No commercial nexus**

to contract / agree / consent to being regulated by the FCC, WALTER OLENICK demands actual damages of one million dollars ($1,000,000).

**19**. USOA's claim is "quasi-criminal," the very nature of which claim intends to stigmatize an individual's credibility, social acceptability, commercial associations, and reputation, generally.

**20**. It's typically the case that punitive damages are a no-go against a governmental entity, but there are exceptions. USOA can't pretend to be the bastion of protection of individual rights as the cover story for malicious abuse of those who assert those rights. USOA has acted with wanton, depraved, egregious, mind-boggling, reality-defiant, even conscience-shocking relentlessness and non-derailable intent in pursuit of its totally frivolous and groundless claims against THE OLENICKS. *Seven years* ago, this court declared and confirmed *judicially* that THE OLENICKS were not owners of the **frequency**. The FCC confessed *five years* ago, in writing, to having no commercial nexus to enforce. For USOA's willful or reckless acts of managerial employees (to include attorneys), wanton, depraved, reckless or careless or callous or gross disregard, gross negligence, reckless or willful indifference for and regarding WALTER OLENICK's right not to contract / agree / consent to being regulated under Sixth Plank policy by the FCC, WALTER OLENICK demands one million dollars ($1,000,000) in punitive damages.

**21**. Chronological maturity shouldn't matter in such fact patterns, but since TEXAS recognizes punishment enhancement for certain criminal conduct where the target is aged 65 or older, it's fully recognized in TEXAS that those of that chronological

---

ORIGINAL COUNTER-CLAIM (THE OLENICKS)                                                6
**No commercial nexus**

maturity are given some additional measure of protection under the law.  That WALTER OLENICK is at least 65, and has been from the time all this started, should be a material factor in the punitive damages analysis.

22. Another factor to consider in the punitive damages analysis is USOA's motivation for proceeding with this frivolous suit.  When 90.1 FM was owned independently, the programming included "The Alex Jones Show."  As confessed in the ridiculously overplayed news flash accompanying the filing of this suit, USOA's motive is to take Alex Jones' programming off the air.  While that does affect THE OLENICKS' right(s) of association and right(s) *to* contract, more significantly it squarely reflects on USOA's intentional rights-hating motive of everything going on here via USOA's officers, agents, and employees.

### Counter-Claim 3 – Violation of Right Not to Contract / Agree / Consent – M. RAE NADLER-OLENICK.

23. USOA, as Plaintiff, has waived immunity.

24. Paragraphs 8. to 17. are included here.

25. For USOA's intentional harassment, intimidation, and/or retaliation against M. RAE NADLER-OLENICK, for her repeated, and necessarily so, assertion of her right *not* to contract / agree / consent to being regulated by the FCC, M. RAE NADLER-OLENICK demands actual damages of one million dollars ($1,000,000).

26. USOA's claim is "quasi-criminal," the very nature of which claim intends to stigmatize an individual's credibility, social acceptability, commercial associations,

and reputation, generally.

27. It's typically the case that punitive damages are a no-go against a governmental entity, but there are exceptions. USOA can't pretend to be the bastion of protection of individual rights as the cover story for malicious abuse of those who assert those rights.  USOA has acted with wanton, depraved, egregious, mind-boggling, reality-defiant, even conscience-shocking relentlessness and non-derailable intent in pursuit of its totally frivolous and groundless claims against THE OLENICKS. *Seven years* ago, this court declared and confirmed *judicially* that THE OLENICKS were not owners of the **frequency**. The FCC confessed *five years* ago, in writing, to having no commercial nexus to enforce. For USOA's willful or reckless acts of managerial employees (to include attorneys), wanton, depraved, reckless or careless or callous or gross disregard, gross negligence, reckless or willful indifference for and regarding M. RAE NADLER-OLENICK's right not to contract / agree / consent to being regulated under Sixth Plank policy by the FCC, M. RAE NADLER-OLENICK demands one million dollars ($1,000,000) in punitive damages.

28. Chronological maturity shouldn't matter in such fact patterns, but since TEXAS recognizes punishment enhancement for certain criminal conduct where the target is aged 65 or older, it's fully recognized in TEXAS that those of that chronological maturity are given some additional measure of protection under the law.  That M. RAE NADLER-OLENICK is at least 65, and has been from the time all this started, should be a material factor in the punitive damages analysis.

29. Another factor to consider in the punitive damages analysis is USOA's

---

ORIGINAL COUNTER-CLAIM (THE OLENICKS)                                      8
**No commercial nexus**

motivation for proceeding with this frivolous suit. When 90.1 FM was owned independently, the programming included "The Alex Jones Show." As confessed in the ridiculously overplayed news flash accompanying the filing of this suit, USOA's motive is to take Alex Jones' programming off the air. While that also affects THE OLENICKS' right(s) of association and right(s) *to* contract, more significantly it squarely reflects on USOA's intentional rights-hating motive of everything going on here via USOA's officers, agents, and employees.

### Counter-Claim 4 –
### Violation of Right of Association –
### WALTER OLENICK.

**30.** USOA, as Plaintiff, has waived immunity.

**31.** The right of association is a fundamental right, recognized both in the laws of Texas and of the United States.

**32.** USOA's motive, as confessed in the news flash that accompanied USOA's filing of this suit, is to take Alex Jones' programming off the air.

**33.** THE OLENICKS fully support what Alex is doing in the way of getting information disseminated that isn't provided by main stream media programming.

**34.** To try to take Alex Jones' programming off the air is to interfere with WALTER OLENICK's right of association with those who have gone to the trouble they have to get Alex Jones' programming available to those interested in the Austin area.

**35.** For USOA's intentional harassment, intimidation, and/or retaliation against

**No commercial nexus**

WALTER OLENICK, for his assertion of his right of association with those who support what Alex Jones is doing, WALTER OLENICK demands actual damages of one million dollars ($1,000,000).

36. USOA's claim is "quasi-criminal," the very nature of which claim intends to stigmatize an individual's credibility, social acceptability, commercial associations, and reputation, generally.

37. It's typically the case that punitive damages are a no-go against a governmental entity, but there are exceptions. USOA can't pretend to be the bastion of protection of individual rights as the cover story for malicious abuse of those who assert those rights. USOA has acted with wanton, depraved, egregious, mind-boggling, reality-defiant, even conscience-shocking relentlessness and non-derailable intent in pursuit of its totally frivolous and groundless claims against THE OLENICKS. *Seven years* ago, this court declared and confirmed *judicially* that THE OLENICKS were not owners of the **frequency**.  The FCC confessed *five years* ago, in writing, to having no commercial nexus to enforce. For USOA's willful or reckless acts of managerial employees (to include attorneys), wanton, depraved, reckless or careless or callous or gross disregard, gross negligence, reckless or willful indifference for and regarding WALTER OLENICK's right of association with those who support what Alex Jones is doing, WALTER OLENICK demands one million dollars ($1,000,000) in punitive damages.

38. Chronological maturity shouldn't matter in such fact patterns, but since TEXAS recognizes punishment enhancement for certain criminal conduct where the target

---

is aged 65 or older, it's fully recognized in TEXAS that those of that chronological maturity are given some additional measure of protection under the law.  That WALTER OLENICK is at least 65, and has been from the time all this started, should be a material factor in the punitive damages analysis.

**39**. Another factor to consider in the punitive damages analysis is USOA's motivation for proceeding with this frivolous suit.  When 90.1 FM was owned independently, the programming included "The Alex Jones Show."  As confessed in the ridiculously overplayed news flash accompanying the filing of this suit, USOA's motive is to take Alex Jones' programming off the air. While this also affects THE OLENICKS' right(s) **not** to contract and right(s) **to** contract, more significantly it squarely reflects on USOA's intentional rights-hating motive of everything going on here via USOA's officers, agents, and employees.

### Counter-Claim 5 – Violation of Right of Association – M. RAE NADLER-OLENICK.

**40**. USOA, as Plaintiff, has waived immunity.

**41**. The right of association is a fundamental right, recognized both in the laws of Texas and of the United States.

**42**. USOA's motive, as confessed in the news flash that accompanied USOA's filing of this suit, is to take Alex Jones' programming off the air.

**43**. THE OLENICKS fully support what Alex is doing in the way of getting information disseminated that isn't provided by main stream media programming.

ORIGINAL COUNTER-CLAIM (THE OLENICKS)                                     11
**No commercial nexus**

**44.** To try to take Alex Jones' programming off the air is to interfere with M. RAE NADLER-OLENICK's right of association with those who have gone to the trouble they have to get Alex Jones' programming available to those interested in the Austin area.

**45.** For USOA's intentional harassment, intimidation, and/or retaliation against M. RAE NADLER-OLENICK, for her assertion of her right of association with those who support what Alex Jones is doing, M. RAE NADLER-OLENICK demands actual damages of one million dollars ($1,000,000).

**46.** USOA's claim is "quasi-criminal," the very nature of which claim intends to stigmatize an individual's credibility, social acceptability, commercial associations, and reputation, generally.

**47.** It's typically the case that punitive damages are a no-go against a governmental entity, but there are exceptions. USOA can't pretend to be the bastion of protection of individual rights as the cover story for malicious abuse of those who assert those rights. USOA has acted with wanton, depraved, egregious, mind-boggling, reality-defiant, even conscience-shocking relentlessness and non-derailable intent in pursuit of its totally frivolous and groundless claims against THE OLENICKS. *Seven years* ago, this court declared and confirmed *judicially* that THE OLENICKS were not owners of the **frequency**. The FCC confessed *five years* ago, in writing, to having no commercial nexus to enforce. For USOA's willful or reckless acts of managerial employees (to include attorneys), wanton, depraved, reckless or careless or callous or gross disregard, gross negligence, reckless or willful

---

**No commercial nexus**

indifference for and regarding M. RAE NADLER OLENICK's right of association

with those who support what Alex Jones is doing, M. RAE NADLER OLENICK

demands one million dollars ($1,000,000) in punitive damages.

**48**. Chronological maturity shouldn't matter in such fact patterns, but since TEXAS

recognizes punishment enhancement for certain criminal conduct where the target

is aged 65 or older, it's fully recognized in TEXAS that those of that chronological

maturity are given some additional measure of protection under the law.  That M.

RAE NADLER-OLENICK is at least 65, and has been from the time all this started,

should be a material factor in the punitive damages analysis.

**49**. Another factor to consider in the punitive damages analysis is USOA's

motivation for proceeding with this frivolous suit.  When 90.1 FM was owned

independently, the programming included "The Alex Jones Show."  As confessed in

the ridiculously overplayed news flash accompanying the filing of this suit, USOA's

motive is to take Alex Jones' programming off the air. While this also affects THE

OLENICKS' right(s) *not* to contract and right(s) *to* contract, more significantly it

squarely reflects on USOA's intentional rights-hating motive of everything going on

here via USOA's officers, agents, and employees.


### Counter-Claim 6 –
### Violation of Right to Contract –
### WALTER OLENICK.

**50**. USOA, as Plaintiff, has waived immunity.

**No commercial nexus**

51. The right to contract is a fundamental right, recognized both in the laws of Texas and of the United States.

52. USOA's motive, as confessed in the news flash that accompanied USOA's filing of this suit, is to take Alex Jones' programming off the air.

53. Those who set up the electronics that creates the **frequency** and its programming rented an apartment from THE OLENICKS. THE OLENICKS have the right to contract with those renters.

54. To try to take Alex Jones' programming off the air is to interfere with WALTER OLENICK's right to contract with those who maintain the programming that includes "The Alex Jones Show" for those interested in the Austin area. Those folks are exercising their right of free speech.

55. For USOA's intentional harassment, intimidation, and/or retaliation against WALTER OLENICK, for his assertion of his right to contract with those who provide Alex Jones' programs, WALTER OLENICK demands actual damages of one million dollars ($1,000,000).

56. USOA's claim is "quasi-criminal," the very nature of which claim intends to stigmatize an individual's credibility, social acceptability, commercial associations, and reputation, generally.

57. It's typically the case that punitive damages are a no-go against a governmental entity, but there are exceptions. USOA can't pretend to be the bastion of protection of individual rights as the cover story for malicious abuse of those who assert those rights. USOA has acted with wanton, depraved, egregious, mind-boggling, reality-

---

defiant, even conscience-shocking relentlessness and non-derailable intent in pursuit of its totally frivolous and groundless claims against THE OLENICKS. *Seven years* ago, this court declared and confirmed *judicially* that THE OLENICKS were not owners of the **frequency**.  The FCC confessed *five years* ago, in writing, to having no commercial nexus to enforce. For USOA's willful or reckless acts of managerial employees (to include attorneys), wanton, depraved, reckless or careless or callous or gross disregard, gross negligence, reckless or willful indifference for and regarding WALTER OLENICK's right to contract, WALTER OLENICK demands one million dollars ($1,000,000) in punitive damages.

58. Chronological maturity shouldn't matter in such fact patterns, but since TEXAS recognizes punishment enhancement for certain criminal conduct where the target is aged 65 or older, it's fully recognized in TEXAS that those of that chronological maturity are given some additional measure of protection under the law.  That WALTER OLENICK is at least 65, and has been from the time all this started, should be a material factor in the punitive damages analysis.

59. Another factor to consider in the punitive damages analysis is USOA's motivation for proceeding with this frivolous suit.  When 90.1 FM was owned independently, the programming included "The Alex Jones Show."  As confessed in the ridiculously overplayed news flash accompanying the filing of this suit, USOA's motive is to take Alex Jones' programming off the air. While this also affects THE OLENICKS' right(s) *not* to contract and right(s) of association, more significantly it squarely reflects on USOA's intentional rights-hating motive of everything going on

here via USOA's officers, agents, and employees.

## Counter-Claim 7 – Violation of Right to Contract – M. RAE NADLER-OLENICK.

**60**. USOA, as Plaintiff, has waived immunity.

**61**. The right to contract is a fundamental right, recognized both in the laws of Texas and of the United States.

**62**. USOA's motive, as confessed in the news flash that accompanied USOA's filing of this suit, is to take Alex Jones' programming off the air.

**63**. Those who set up the electronics that creates the **frequency** and its programming rented an apartment from THE OLENICKS.  THE OLENICKS have the right to contract with those renters.

**64**. To try to take Alex Jones' programming off the air is to interfere with M. RAE NADLER-OLENICK's right to contract with those who maintain the programming that includes "The Alex Jones Show" for those interested in the Austin area.  Those folks are exercising their right of free speech.

**65**. For USOA's intentional harassment, intimidation, and/or retaliation against M. RAE NADLER-OLENICK, for her assertion of her right to contract with those who provide Alex Jones' programs, M. RAE NADLER-OLENICK demands actual damages of one million dollars ($1,000,000).

**66**. USOA's claim is "quasi-criminal," the very nature of which claim intends to stigmatize an individual's credibility, social acceptability, commercial associations,

---

**No commercial nexus**

and reputation, generally.

67. It's typically the case that punitive damages are a no-go against a governmental entity, but there are exceptions. USOA can't pretend to be the bastion of protection of individual rights as the cover story for malicious abuse of those who assert those rights.  USOA has acted with wanton, depraved, egregious, mind-boggling, reality-defiant, even conscience-shocking relentlessness and non-derailable intent in pursuit of its totally frivolous and groundless claims against THE OLENICKS. *Seven years* ago, this court declared and confirmed *judicially* that THE OLENICKS were not owners of the **frequency**. The FCC confessed *five years* ago, in writing, to having no commercial nexus to enforce. For USOA's willful or reckless acts of managerial employees (to include attorneys), wanton, depraved, reckless or careless or callous or gross disregard, gross negligence, reckless or willful indifference for and regarding M. RAE NADLER-OLENICK's right to contract, M. RAE NADLER-OLENICK demands one million dollars ($1,000,000) in punitive damages.

68. Chronological maturity shouldn't matter in such fact patterns, but since TEXAS recognizes punishment enhancement for certain criminal conduct where the target is aged 65 or older, it's fully recognized in TEXAS that those of that chronological maturity are given some additional measure of protection under the law.  That M. RAE NADLER-OLENICK is at least 65, and has been from the time all this started, should be a material factor in the punitive damages analysis.

69. Another factor to consider in the punitive damages analysis is USOA's

motivation for proceeding with this frivolous suit.  When 90.1 FM was owned independently, the programming included "The Alex Jones Show."  As confessed in the ridiculously overplayed news flash accompanying the filing of this suit, USOA's motive is to take Alex Jones' programming off the air. While this also affects THE OLENICKS' right(s) *not* to contract and right(s) of association, more significantly it squarely reflects on USOA's intentional rights-hating motive of everything going on here via USOA's officers, agents, and employees.

### Regarding Medium of Exchange.

**70**. Should the present debt-based system fail or be replaced, THE OLENICKS will accept the commercial purchasing-value (market value) equivalent, including gold and/or silver Coin, e.g., Double Eagles, minted by The Treasury.


### Request for Relief

THE OLENICKS request as follows:

A. That this court order USOA to pay the damages claims asserted, with all applicable interest and costs.

B. That THE OLENICKS be awarded any and all other relief, at law, in equity, or sui generis to which they may show themselves justly entitled.

Respectfully submitted,

/s/ Walt Olenick
WALTER OLENICK
P.O. Box 7486
Austin, Texas  78713

/s/ M. Rae Nadler-Olenick
M. RAE NADLER-OLENICK
P.O. Box 7486
Austin, Texas  78713

### § 1746 Declaration – WALTER OLENICK

Per 28 U.S.C. § 1746, and under the laws of perjury of the United States, I, WALTER OLENICK, depose and declare (or certify, verify or state), that I am at least 21 years of age, in fact, I am more than 65 years of age, that I am competent to make this Affidavit / Declaration, that I have personal knowledge of these facts, and that these facts are true and correct.

The facts asserted in this pleading are true and correct.

My wife and I own the land, consisting of two adjacent lots, both developed with apartment buildings, on which stands the tower used by those who owned 90.1 FM to mount their antenna.

Neither one of us has ever consented to being regulated by the FCC for any purpose.

Neither one of us has ever asserted a private ownership interest in 90.1 FM or in any other frequency for that matter.

It's just very embarrassing to be charged "quasi-criminally," all the more so where the FCC has already admitted, in writing, that there's no commercial nexus.

Attached as Exhibit 2 is a true and correct copy of my FOIA Request sent to the FCC requesting the FCC's documents and other information based on which they assert a commercial nexus involving me.

Further, Declarant sayeth not.

Executed on this the 2d day of October, 2018

/s/ Walt Olenick
WALTER OLENICK, Declarant

**No commercial nexus**

### § 1746 Declaration – M. RAE NADLER-OLENICK

Per 28 U.S.C. § 1746, and under the laws of perjury of the United States, I, M. RAE NADLER-OLENICK, depose and declare (or certify, verify or state), that I am at least 21 years of age, in fact, I am more than 65 years of age, that I am competent to make this Affidavit / Declaration, that I have personal knowledge of these facts, and that these facts are true and correct.

The facts asserted in this pleading are true and correct.

My husband and I own the land, consisting of two adjacent lots, both developed with apartment buildings, on which stands the tower used by those who owned 90.1 FM to mount their antenna.

Neither one of us has ever consented to being regulated by the FCC for any purpose.

Neither one of us has ever asserted a private ownership interest in 90.1 FM or in any other frequency for that matter.

It's just very embarrassing to be charged "quasi-criminally," all the more so where the FCC has already admitted, in writing, that there's no commercial nexus.

Attached as Exhibit 1 is a true and correct copy of my FOIA Request sent to the FCC requesting the FCC's documents and other information based on which they assert a commercial nexus involving me.

Attached as Exhibit 3 is a true and correct copy of the FCC's initial response to our FOIA requests.

Attached as Exhibit 4 is a true and correct copy of the FCC's response to our FOIA requests along with the envelope.  Amongst all the static from the unilaterally asserted "operation" and "broadcasting," generic legal conclusions found in truism statements for which there are no facts, CARLSON confesses that there are no signed agreements with us about anything.

Further, Declarant sayeth not.

Executed on this the 2d day of October, 2018

*M. Rae Nadler-Olenick*

/s/ M. Rae Nadler-Olenick
M. RAE NADLER-OLENICK,
Declarant

---

**No commercial nexus**

## CERTIFICATE OF SERVICE

By my signature below, I certify that on this the  2d  day of October, 2018, I have served a true and correct copy of this Original Counter-Claim on the following by Priority Mail or Certified Mail and have delivered the original and one copy to the court:

GARY W. WRIGHT
Assistant United States Attorney
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216

*M. Rae Nadler-Olenick*

/s/ M. Rae Nadler-Olenick
M. RAE NADLER-OLENICK,
Declarant

**No commercial nexus**

September 12, 2013



M. RAE NADLER OLENICK
P.O. Box 7486
Austin, Texas  78713


SEAN LEV, General Counsel
FCC
445 12th Street, S.W., Room 1-A836
Washington, DC  20554

Re:    Freedom of Information Act Request (FOIA) Request


Good morning:

Background.

    I have received a preposterous letter from someone claiming to be a "Resident Agent" out of the Houston Office of the Enforcement Bureau.  His reference number is this: EB-FIELDSCR-13-00010527.

    From information available online, it appears that the General Counsel doubles as the FOIA Disclosure Officer.  If that is an errant conclusion, please forward this to the proper Disclosure Officer for the FCC.

    There is no need to contact me by telephone.  The requested documents either exist, and you'll provide them, or not, meaning there's nothing to provide.  Please document in writing any possible confusion experienced on your end by these two very straightforward Requests.

FOIA REQUEST 1

    Requestor Type: Other.  Please send me one copy of each document that satisfies the following general description:

        Each document signed by me by which I have volunteered (agreed) to be
        regulated by the FCC at any time for any reason


FOIA REQUEST 2

    Requestor Type: Other.  If different from the response to Request 1, please send me one copy of each document that satisfies the following general description:

DISCLOSURE OFFICER(S), FCC                    **NO COMMERCIAL NEXUS**
September 12, 2013
Page 2 _____

     Each document on which the FCC relies to assert its/the claim that I have in any way consented to being regulated by the FCC


     I am ready, willing, and able to pay the costs of search and reproduction, which reproduction cost I understand to be $0.10 per page. If it looks like either the search time is going to exceed two hours or the number of pages is going to exceed 100, please let me know.

Per 28 U.S.C. § 1746, I, RAE OLENICK, depose and declare (certify, verify, or state), under the penalty of perjury, that I am the person making this request, that the address above is my address, that I am at least 21 years of age, that I am competent to make this Declaration, and that I have personal knowledge of the facts.


Executed on this the 11th day of September, 2013.



                     /s/ Rae Nadler Olenick
                     M. RAE NADLER OLENICK

September 13, 2013

WALTER OLENICK
P.O. Box 7486
Austin, Texas  78713

Ex. 2

SEAN LEV, General Counsel
FCC
445 12th Street, S.W., Room 1-A836
Washington, DC  20554

Re:    Freedom of Information Act Request (FOIA) Request

Good morning:

Background.

I have received a preposterous letter from someone claiming to be a "Resident Agent" out of the Houston Office of the Enforcement Bureau.  His reference number is this: EB-FIELDSCR-13-00010527.

From information available online, it appears that the General Counsel doubles as the FOIA Disclosure Officer.  If that is an errant conclusion, please forward this to the proper Disclosure Officer for the FCC.

There is no need to contact me by telephone.  The requested documents either exist, and you'll provide them, or not, meaning there's nothing to provide.  Please document in writing any possible confusion experienced on your end by these two very straightforward Requests.

FOIA REQUEST 1

Requestor Type: Other.  Please send me one copy of each document that satisfies the following general description:

Each document signed by me by which I have volunteered (agreed) to be regulated by the FCC at any time for any reason

FOIA REQUEST 2

Requestor Type: Other.  If different from the response to Request 1, please send me one copy of each document that satisfies the following general description:

DISCLOSURE OFFICER(S). FCC                    **NO COMMERCIAL NEXUS**
September 11, 2013
Page 2

Each document on which the FCC relies to assert its/the claim that I have in any way consented to being regulated by the FCC


I am ready, willing, and able to pay the costs of search and reproduction. which reproduction cost I understand to be $0.10 per page.  If it looks like either the search time is going to exceed two hours or the number of pages is going to exceed 100, please let me know.

Per 28 U.S.C. § 1746, I, WALTER OLENICK, depose and declare (certify, verify, or state), under the penalty of perjury, that I am the person making this request. that the address above is my address, that I am at least 21 years of age, that I am competent to make this Declaration, and that I have personal knowledge of the facts.


Executed on this the 12th day of September, 2013.


/s/ Walter Olenick
WALTER OLENICK



Federal Communications Commission
Washington, D.C. 20554

Ex. 3

September 23, 2013

Walter Olenick
M. Rae Nadler Olenick
P.O. Box 7486
Austin, TX 78713

Dear: Walter Olenick & M. Rae Nadler Olenick:

This acknowledges receipt of your Freedom of Information Act (FOIA) request filed with
the Federal Communications Commission. Your request has been assigned FOIA
Control number 2013-559. Agencies are allowed 20 working days to respond to your
request, extending this period for an additional 10 working days under certain
circumstances. See 5 U.S.C. § 552(a)(6)(A)(i) and 5 U.S.C. § 552(a)(6)(B)(i). We
anticipate responding to your request on 10/22/13. If, additional time is needed to
respond to your request you will be notified.

If you have any questions concerning this notice, please call the FOIA Office at
202-418-0440.

FCC
FOIA Office



**Federal Communications Commission
Enforcement Bureau**
445 12th Street SW
Washington, DC 20554

Ex. 4

September 26, 2013

Walter Olenick
M. Rae Nadler Olenick
P.O. Box 7486
Austin, TX 78713

Re:  FOIA Control No. 2013-559

This is in response to your Freedom of Information Act (FOIA) requests dated September 13, 2013 and received by the Commission's FOIA Office on September 18, 2013, seeking "each document signed by me by which I have volunteered (agreed) to be regulated by the FCC at any time for any reason" and "each document on which the FCC relies to assert its/the claim that I have in any way consented to being regulated by the FCC."[1]

We searched our files and found no documents signed by either of you.  Please understand that the operation of AM and FM broadcast radio stations anywhere in the United States requires a license issued by the FCC.  Operation of such a station without a license violates Section 301 of the Communications Act of 1934, as amended, 47 U.S.C. § 301.  Information on how to obtain such licenses maybe found at http://www.fcc.gov/guides/how-apply-radio-or-television-broadcast-station.

For the purpose of fee assessment, you were categorized as an "all others" requester who must pay for search time in excess of two hours and for reproducing records in excess of 100 pages, 47 C.F.R. §0.470(a)(3).  Because our search took less than two hours and no records were located, there are no fees associated with processing your request.

---

[1] Two requests were submitted, one by Mr. Olenick and one by Mrs. Olenick, both seeking essentially the same records.  We have consolidated them for administrative convenience.

The undersigned official is responsible for this action on your FOIA request. You may file an application for review of this decision with the Commission's Office of General Counsel, 445 – 12th Street, S.W., Washington, DC 20554, within 30 days of the date of this letter pursuant to Section 0.461(j) of the Commission's Rules, 47 C.F.R. § 0.461(j).

Sincerely,

Dennis P. Carlton
Regional Director, South Central Region
Enforcement Bureau

cc:     FOIA Officer (OMD/PERM)

U.S. POSTAGE
$5.80

30096
Date of sale
06/17/13
00   2500
0R2583G6

**Federal Communications Commission**
**Enforcement Bureau**
**3575 Koger Blvd., Ste. 320**
**Duluth, Ga. 30096**

S. DIXON

OFFICIAL BUSINESS
Penalty For Private Use $300

7012 2920 0002 0569 4489

WALTER OLENICK
M. Rell NEIDER OLENICK
P.O. Box 14320
AUSTIN, TX 78713

78713746865