IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

18 DEC -4  PM 2: 37

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | No. 1:18-CV-00675-LY |
| ex rel. AJIT PAI, Chair, | § | |
| FEDERAL COMMUNICATIONS | § | |
| COMMISSION (FCC), | § | NO CONSENT TO ARBITRATION |
| a public, charitable trust, and | § | |
| a non-beneficiary, | § | |
| | § | |
| Plaintiff, Counter-Respondent, | § | NO CONSENT TO NON- |
| | § | JUDICIAL DECISION-MAKING |
| v. | § | INCLUDING MAGISTRATE |
| | § | PARTICIPATION |
| WALTER OLENICK, and | § | |
| M. RAE NADLER-OLENICK, | § | |
| non-fiduciaries, | § | |
| | § | |
| Respondents, Counter-Plaintiffs. | § | |

## MOTION TO DISQUALIFY

COME NOW WALTER OLENICK and M. RAE NADLER-OLENICK, husband

and wife, THE OLENICKS, Respondents and Counter-Claimants, who move as

follows:

**Motion to Disqualify**

THE OLENICKS move that LEE YEAKEL be disqualified from this case.

Conditionally, THE OLENICKS also move that should any magistrate actually

participate in this matter that such magistrate also be disqualified.

If courts of inquiry still exist, THE OLENICKS request the convening of a court

of inquiry relative to this matter.

**Table of Contents**

MOTION TO DISQUALIFY ................................................................. 1

Motion to Disqualify ................................................................. 1

Index of Authorities ................................................................. 4

Discussion ................................................................. 10

The illegal "orders" compelling Disqualification. ................................ 10

Section 636(b) cannot *lawfully* be read in a vacuum of space. ..................... 10

One last effort – § 636(b) **must** be read *in pari materia* with § 636(c). .......... 10

"Magistrates" are not "judges." ................................................ 11

"Magistrates" are "arbiters." ................................................ 11

Arbitration cannot be compelled. ................................................ 11

This is the bedrock foundation for the cover-story procedures of § 636(c). 12

Consent, Procedure, and The relevant part of § 636(c). ................... 12

§ 636(b), by itself, is irrelevant. ................................................ 17

Disqualification standard. ................................................ 19

The crux of the matter – Sedition. ................................................ 22

Court "orders" constitute "force." ................................................ 22

What's being altered, "overthrown," via "force?" ................................ 22

In addition to compelled arbitration, what else is downstream? ............... 23

Committing Sedition constitutes "bias" as a matter of law ................... 24

Incurable violations of THE OLENICKS' rights. ................................ 26

Right <u>not</u> to contract / agree / consent. ................................ 26

The fundamental right <u>to</u> contract. ................................ 26

**Consent cannot be compelled**

The fundamental right *not* to contract – consent cannot be compelled.26

Right of access. ................................................................................31

Right to Structural Due Process. .................................................32

Right to a fair trial (fundamental and statutory procedural Due Process).33

Criminal violations of the law.............................................................34

Intentional violation of right not to contract / agree / consent...................34

Intentional violation of right of access to the courts....................................34

Intentional violation of right to a fair trial. ...............................................35

Making and using false documents. ............................................................35

Falsification of Records. ...............................................................................35

Record tampering. ........................................................................................36

Mail fraud. ....................................................................................................36

Witness intimidation....................................................................................36

Joining the original conspiracy against THE OLENICKS. .........................37

Intentional violation of right to Structural Due Process............................37

Due Process says there's a limit. ................................................................38

Summary and Conclusion .....................................................................................39

Objective standard........................................................................................39

YEAKEL has no jurisdiction to refer anything, much less dispositive issues.39

YEAKEL is on Notice of the crimes involved. .............................................40

YEAKEL is compelling consent, and that in the context of FCC's case, which, itself, exists to garner judicial approval for compelling consent................40

Request for Relief.................................................................................................41

---

**Consent cannot be compelled**

§ 1746 Declaration – WALTER OLENICK ..................................................................41

§ 1746 Declaration – M. RAE NADLER-OLENICK .................................................42

CERTIFICATE OF CONFERENCE ..........................................................................42

CERTIFICATE OF SERVICE....................................................................................43

## Index of Authorities

**Cases**

*Allgeyer v. Louisiana,*
   165 U.S. 578, 17 S. Ct. 427, 41 L. Ed. 832 (1897)....................................26

*United States v. **American Tobacco** Co.,*
   221 U.S. 106, 31 S. Ct. 632, 55 L. Ed. 663 (1911)....................................26

*Arnold v. United States,*
   544 U.S. 1058, 125 S. Ct. 2527 (Mem), 161 L. Ed. 2d 1107, 73 U.S.L.W. 3623, 73
   U.S.L.W. 3690, 73 U.S.L.W. 3693, 2005 Daily J. D.A.R. 6241 (May 31, 2005)......28

*Ballard v. Comm'r,*
   544 U.S. 40, 125 S. Ct. 1270, 161 L. Ed. 2d 227 (2005)...........................27

*Bates v. State Bar of Arizona,*
   433 U.S. 350, 97 S. Ct. 2691, 53 L. Ed. 2d 810 (1977).............................27

*Boddie v. Connecticut,*
   401 U.S. 371, 91 S. Ct. 780, 28 L. Ed. 2d 113 (1971)...............................31

*Bond v. United States,*
   __ U.S. __, 134 S. Ct. 2077, 189 L. Ed. 2d 1 (2014) (*Bond II*). ................38

*United States v. **Booker**,*
   543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005)...........................28

*Burger King Corp. v. Rudzewicz,*
   471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).............................27

*Caperton v. A.T. Massey Coal Co., Inc.,*
   556 U.S. 868, 129 S. Ct. 2252, 173 L. Ed. 2d 1208 (2009)................................20, 33

*Christopher v. Harbury,*
  536 U.S. 403, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002)..........................................31

*Escobedo v. Illinois,*
  378 U.S. 478, 84 S. Ct. 1758, 12 L. Ed. 2d 977 (1964)..............................................27

*Ex parte Smythe,*
  116 Tex. Crim. 146, 28 S.W.2d 161 (Tex. Crim. App. 1930). ...................................26

*Felter v. Southern Pacific Co.,*
  359 U.S. 326, 79 S. Ct. 847, 3 L. Ed. 2d 854 (1959)..................................................27

*United States v. **Ford**,*
  824 F.2d 1430 (5th Cir. 1987)..............................................................22, 29, 30

*Gamba v. United States,*
  553 U.S. 1050, 128 S. Ct. 2472 (Mem.), 171 L. Ed. 2d 764 (2008) (May 19). ..........31

*Gomez v. United States,*
  490 U.S. 858, 109 S. Ct. 2237, 104 L. Ed. 2d 923 (1989)..............................22, 28, 29

*Gonzalez v. United States,*
  553 U.S. 242, 128 S. Ct. 1765, 170 L. Ed. 2d 616 (2008) (May 12). .........................31

*Goodman v. Lukens Steel Co.,*
  482 U.S. 656, 107 S. Ct. 2617, 96 L. Ed. 2d 572 (1987), superceded on other
  grounds (statute of limitations) by statute (28 U.S.C.A. § 1658) (establishing 4-
  year limitations period). ...........................................................................................26

*District of Columbia v. **Heller**,*
  554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008)..........................................27

*Horne v. Dep't of Agric.,*
  __ U.S. __, 135 S. Ct. 2419, 192 L. Ed. 2d 388 (2015)..............................................27

*In re Boston's Children First,*
  244 F.3d 164 (1st Cir. 2001). ....................................................................................21

*In re City of Houston,*
  745 F.2d 925 (5th Cir. 1984)......................................................................................19

*In re Murchison,*
  349 U.S. 133, 75 S. Ct. 623, 99 L. Ed. 942 (1955)..............................................20, 33

*Johnson v. United States,*
  559 U.S. 133, 130 S. Ct. 1265, 176 L. Ed. 2d 1 (2010)..............................................22

**Consent cannot be compelled**

*Jordan v. State*,
   51 Tex. Crim. 531, 103 S.W. 633 (Tex. Crim. App. 1907). ...................................26

*Kalan v. City of St. Francis*,
   274 F.3d 1150 (7th Cir. 2001)...............................................................................30

*King v. Burwell*,
   __ U.S. __, 135 S. Ct. 2480, 192 L. Ed. 2d 483 (2015).........................................26

*Aetna Life Ins. Co. v. **Lavoie***,
   475 U.S. 813, 106 S. Ct. 1580, 89 L. Ed. 2d 823 (1986)........................................20

*Liljeberg v. Health Svcs. Acq. Corp.*,
   486 U.S. 847, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988)......................................20

*Liteky v. United States*,
   510 U.S. 540, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994).......................................20

*Lozman v. Riviera Beach*,
   568 U.S. 115, 133 S. Ct. 735, 184 L. Ed. 2d 604 (2013)...................................27, 28

*Marsh USA Inc. v. Cook*,
   354 S.W.3d 764 (Tex. 2011)..................................................................................26

*Mayberry v. Pennsylvania*,
   400 U.S. 455, 91 S. Ct. 499, 27 L. Ed. 2d 532 (1971)...........................................20

*McLean v. Arkansas*,
   211 U.S. 539, 29 S. Ct. 206, 53 L. Ed. 315 (1909).................................................26

*Mendes Junior Int'l Co. v. M/V Sokai Maru*,
   978 F.2d 920 (5th Cir. 1992).................................................................................31

*Miranda v. Arizona*,
   384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)..........................................27

*Muller v. Oregon*,
   208 U.S. 412, 28 S. Ct. 324, 52 L. Ed. 551 (1908).................................................26

*National Federation of Independent Business v. Sebelius*,
   567 U.S. 519, 132 S. Ct. 2566, 183 L. Ed. 2d 450 (2012) (***NFIB***). ..........................27

*Nichols v. Alley*,
   71 F.3d 347 (10th Cir.1995)..................................................................................21

*Ohralik v. Ohio State Bar Assn.,*
   436 U.S. 447, 98 S. Ct. 1912, 56 L. Ed. 2d 444 (1978)..............................................27

*Parker v. Connors Steel Co.,*
   855 F.2d 1510 (11th Cir. 1988)...............................................................11, 33

*Plumbers' Union v. Borden,*
   373 U.S. 690, 83 S. Ct. 1423, 10 L. Ed. 2d 638 (1963)..............................................26

*Pollock v. Farmers' Loan & Trust Co.,*
   157 U.S. 429, 15 S. Ct. 673, 39 L.Ed. 759 (1895) (**Pollock I**)................................27

*Pollock v. Farmers' Loan and Trust Co.,*
   158 U.S. 601, 15 S. Ct. 912, 39 L. Ed. 1108 (1895) (**Pollock II**)..........................27

*Potashnick v. Port City Construction Co.,*
   609 F.2d 1101 (5th Cir. 1980).................................................................19

*R.R. Co. v. Richmond,*
   86 U.S. (19 Wall.) 584, 22 L. Ed. 173 (1873).................................................26

*Reynaga v. Cammisa,*
   971 F.2d 414 (9th Cir. 1992)..................................................................31

*Roell v. Withrow,*
   538 U.S. 580, 123 S. Ct. 1896, 155 L. Ed. 2d 775 (2003).......................................14

*Sao Paulo State of Federative Republic of Brazil v. Am. Tobacco Co., Inc.,*
   535 U.S. 229, 122 S. Ct. 1290, 152 L. Ed. 2d 346 (2002).......................................20

*Standard Oil Co. of New Jersey v. United States,*
   221 U.S. 1, 31 S. Ct. 502, 5 L. Ed. 619 (1910)................................................26

*Storrie v. Cortes,*
   90 Tex. 283, 38 S.W. 154 (1896)..............................................................26

*Tumey v. Ohio,*
   273 U.S. 510, 47 S. Ct. 437, 71 L. Ed. 749 (1927).............................................21

*Villareal v. State,*
   348 S.W.3d 365 (Tex. App.—Austin 2011, pet dism'd)...........................................20

*Voisine v. United States,*
   __ U.S. __, 136 S. Ct. 2272, 2282, 195 L. Ed. 2d 736 (2016) (Thomas, J, and
   Sotomayor, J., Dissent)......................................................................22

**Consent cannot be compelled**

*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*,
489 U.S. 468, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989)...........................11, 17, 32

*Ward v. Village of Monroeville*,
409 U.S. 57, 93 S. Ct. 80, 34 L. Ed. 2d 267 (1972)....................................................20

*Withrow v. Larkin*,
421 U.S. 35, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975).........................................33, 34

**Statutes**

18 U.S.C.A. §§ 241 and 242.................................................................................34, 35

18 U.S.C.A. § 371 (conspiracy to violate law of the United States).....................35, 36

18 U.S.C.A. § 1001 (making false statements, using false documents). ...................35

18 U.S.C.A. §§ 1341, 1349 (mail fraud and its related conspiracy)............................36

18 U.S.C.A. §§ 1512(b), (c), (k) (witness tampering and its related conspiracy). ......36

18 U.S.C.A. §§ 1513(b), (e)[2] (retaliation and its conspiracy). ................................36

18 U.S.C.A. §§ 1513(e)[1], (e)[2] (retaliation and its conspiracy). ..............................36

18 U.S.C.A. § 1519 (falsification of records in administration of this matter). .........35

18 U.S.C.A. § 2071 (criminal Record-tampering)........................................................36

18 U.S.C.A. §§ 2384, 2385 (Sedition and its conspiracy). ...............................22, 23, 38

28 U.S.C.A. § 451.................................................11, 17, 22, 23, 24, 31, 32, 33, 34, 38

28 U.S.C.A. § 455(a) (unchanged since 1990)..............................................................19

28 U.S.C.A. § 636.......................................................................................11, 16, 17, 40

28 U.S.C.A. § 636(a). ...................................................................................................27

28 U.S.C.A. § 636(b). .....................................................10, 13, 15, 16, 17, 18, 23, 39, 40

28 U.S.C.A. § 636(c).......................................................10, 12, 14, 15, 17, 18, 27, 28, 39

28 U.S.C.A. § 636(c)(1). ..........................................................................................12, 31

**Consent cannot be compelled**

28 U.S.C.A. § 636(c)(2). ............................................................12, 14, 15, 31

## Rule of Civil Procedure

FED. R. CIV. P. 8(c). ............................................................................27

TEX. R. CIV. P. 94.............................................................................27

## Treatises

1 PAGE, THE LAW OF WILLS, §§ 5.7, 15.11 (rev. 2003). ...............................27

AMY MORRIS HESS, GEORGE GLEASON BOGERT & GEORGE TAYLOR BOGERT, THE LAW OF TRUSTS AND TRUSTEES § __ (Supp. 2011) ("BOGERT § __")

BOGERT § 42 (Supp. 2011). ..........................................................27

BOGERT § 44 (Supp. 2011). ..........................................................27

**Consent cannot be compelled**

**Discussion**

<u>The illegal "orders" compelling Disqualification.</u>

Attached are the original illegal referral Order, Doc. [11] (Oct. 15, 2018), and the

follow-up confirmation confessing intent, Doc. [15] (Oct. 31, 2018).

<u>Section 636(b) cannot *lawfully* be read in a vacuum of space.</u>

Regarding being "misinformed," THE OLENICKS will agree to this concept:

When the "parties" are *this* far apart, *someone* is definitely "misinformed."

For whatever reason, YEAKEL is repealing/striking § 636(c), thereby justifying

seeing myopically only § 636(b).  Since YEAKEL doesn't want to hear from THE

OLENICKS what his situation is, THE OLENICKS expect YEAKEL would benefit

by consulting competent counsel. By whatever messenger or route of delivery, the

*message* is still the same, since the authors of it are S.Ct.U.S. and the cited

appellate courts that have so plainly addressed this issue (for decades, now).

<u>One last effort – § 636(b) **must** be read *in pari materia* with § 636(c).</u>

Since YEAKEL has confessed, in writing, of public Record, his intent to engage

(again, still) in Sedition (a conspiracy-only offense, already active from another case

in which YEAKEL intends to compel another *pro se* to consent to magistrate

participation (arbitration)), among other crimes and intentional torts, all committed

under color of law and office, it follows that in order that history confirm that the

*pro ses* are not taking advantage of YEAKEL, and for reasons of decency, generally,

THE OLENICKS, even now, give the matter one last shot.  While YEAKEL must be

removed from this case, there are additional matters regarding which his accepting reality and withdrawing from the conspiracy may/might benefit (or, maybe not).

### *"Magistrates" are not "judges."*

A "judge" has § 451 signature authority. Why? Because "judges" are Nominated, Confirmed, and Appointed, and the duration of the office is "during good behavior." A "magistrate" has § 636 authority. Why? Because "magistrates" are hired into a job of a fixed term. "It goes without saying that it would be improper for a judge to delegate the adjudicative function of his office to one that [who] was neither appointed by the President nor confirmed by the Senate." *Parker*, 855 F.2d at 1524 (referring to the very self-apparent rendering of the opinion by the judge's law clerk). Magistrates are no more § 451 "judges" than law clerks.

### *"Magistrates" are "arbiters."*

Since "magistrates" are not "judges," what is the nature of their work-product? It's not judicial, for they are not "judges." It's not mediatory, for there is not even a *remote* sense of *negotiating* anything. What does that leave? Arbitrative. In short, it's self-evident that "magistrates" are "arbiters."

### *Arbitration cannot be compelled.*

*Volt Information Sciences, Inc.* (Arbitration "is a matter of consent, not coercion.").

***This is the bedrock foundation for the cover-story procedures of § 636(c).***

Since "magistrates" *are* "arbiters," there's not one single, solitary iota of signature authority in any "magistrate" for any "civil case," *unless and until* there's **unanimous consent** by all parties. It'd be manifestly unfair to all litigants for there *not* to be *some*thing like § 636(c), but given the foregoing analysis leading to the bedrock reality that "magistrates" *are* "arbiters," it's conceivable that § 636(c) could have never existed, and even *then* we'd *still* have the reality that *any* "civil case" party's non-consent ends the issue, right then, right there, period.

### Consent, Procedure, and The relevant part of § 636(c).

**§ 636(c)(1)** "Upon the consent of the parties." ... "Upon the consent of the parties."

**§ 636(c)(2)** If a magistrate judge is designated to exercise civil jurisdiction under paragraph (1) of this subsection, the clerk of court shall, at the time the action is filed, notify the parties **of the availability of a magistrate judge** to exercise such jurisdiction. **The decision of the parties shall be communicated to the clerk of court.** Thereafter, either the district court judge or the magistrate judge may again advise the parties **of the availability of the magistrate judge**, but in so doing, <u>**shall also advise the parties that they are free to withhold consent without adverse substantive consequences.**</u> ***<u>Rules of court for the reference of civil matters to magistrate judges shall include procedures to protect the voluntariness of the parties' consent.</u>***

28 U.S.C.A. § 636(c)(1) and (c)(2) (all emphasis added).

Why does § 636(c) exist?  (1) To confirm the *sine qua non*, indispensable nature of **unanimous consent** and (2) to establish the procedures by which both trial *and* appellate courts may evaluate the Record "objectively" for determining

when/if "consent" exists.  Per the <u>original</u> plan, consent arose only where a party affirmatively asserted consent of Record. Where the Record contained something less than unanimous assertion of consent by every single party to the case, no magistrate had signature authority to arbitrate anything.  The *existence* and *content/scope* of § 636(b) was/is irrelevant.  The fact that arbitration *exists* (for any scope of issues, be it broad or narrow) ***in absolutely no way*** means that arbitration has been consented to, much less that it may be compelled.

In general, for "civil cases," there is no magistrate participation without **unanimous consent**.  That part has in no way changed and will never change for so long as there exists a right not to contract / agree / consent, which right is also confirmed by the existence of duress, coercion, undue influence, and even fraud as defenses.  What's changed, and this *has* changed, is the *method* by which consent is determined.  By <u>original</u> design, the procedure the congress contemplated involved at least two "invitations" for *affirmative assertion of consent* to magistrate participation: one to the plaintiff, and then one to the respondent(s). Without affirmative assertion of consent, there'd be, as a matter of law, "no consent."  The stated procedure presumes the Common Law understanding that silence constitutes an affirmative assertion of "no consent." Thus, the <u>original</u> *method* for determining consent was review of the Record for something in writing from each party affirmatively asserting *consent*. However, due to the change (circa 1965) from Money to "funny money," from honest weights and measures, where the medium of exchange was based on an asset, to a medium of exchange based on debt, the

foundational choice of law has changed.  One of the consequences of such change is that consent has been turned on its ear.  From the Common Law setting, silence meant "no consent." Presently, however, in this bank-controlled commercial setting, silence means "consent."  Thus, the <u>original</u> congressional plan had to be "updated" to our present legal environment. *Roell* (silence regarding magistrate participation is construed as consent).  The <u>present</u> *method*, then, is to review the Record for affirmative assertions of *non-consent*.

The point is that while the *method* for determining **unanimous consent** to magistrate participation *has* changed, the **condition precedent** of consent has not; consent has ***in absolutely no way*** been repealed, *or* struck, *or* in any way eliminated.  With or without § 636(c), arbitration is still arbitration.

Judicial intent is clear, here, given that this court fairly well eliminates *everything* about § 636(c).  Doc. [15].  The text of § 636(c)(2) renders overt a trial court's duty to protect Due Process by making clear to all parties that no one has to consent to non-judicial decision-making.  What that <u>presently</u> entails, and this court fails miserably at it, as likely just one among the multitudes of trial courts presently failing miserably at it, is the twice-asserted Notice that **silence will be construed as consent**; hence, that the objecting party needs ***affirmatively to assert non-consent*** in order to avoid magistrate participation.  Given *Roell*, for a trial court to satisfy its duty under § 636(c) regarding "magistrate" participation, rather than Notice requesting *affirmative assertions of **consent***, such Notices need to call for *affirmative assertions of **non-consent***. Neither has occurred in this case.

Does a trial court's failure to give such Notice(s) constitute reversible error? Error?—undoubtedly; reversible?—maybe not. Why not? Placement of "duty to know." Since it's conceivable that a party *is* burdened with a duty to know to object (even where a trial court openly defies its very plain duty of Notice regarding consent as required by § 636(c)(2)), THE OLENICKS didn't wait for any Notice from the court; they have asserted their non-consent from the outset.

What follows is a drastic example in the extreme, but it plainly illustrates YEAKEL's non sequitur, arising from his operational striking of § 636(c).

> Premise:  The needle exists.

> Conclusion:  Therefore, one may be executed.

> Reality: There's "a small matter" of conditions precedent, including indictment, trial, conviction, sentencing (is the death penalty even applicable?), appeal, and maybe even Habeas, between the facts (A) that the needle (i.e., execution) *exists* and (B) that one may be executed. The sole fact that the needle *exists* is **not** what warrants its use.

Applying the analogy.

> YEAKEL's Premise: "magistrates" exist, and they have all the authority in the world, from § 636(b), among other sources, to rule on the issues referred.

> YEAKEL's Conclusion:  Therefore, I may refer anything and everything I want to refer that's within that scope to the designated "magistrate."

> Reality: There is "a small matter" of the condition precedent of **unanimous consent** to arbitration between the facts (A) that "magistrates" exist

---

Motion to Disqualify (THE OLENICKS)                                                    15
**Consent cannot be compelled**

(and have a wide scope of arbitration authority, *and* have been designated, ***and*** the case/issues have been (illegally) referred) and (B) that "magistrates" may participate (arbitrate), anything, at all (much less *dispositive* issues).  The fact that the office of "magistrate" *exists* (and is filled, and has whatever scope, etc.) is ***not*** what warrants "magistrate" participation, i.e., arbitration.  Just because the scope of arbitration is broad doesn't mean that the arbiter has signature authority.  The arbiter has signature authority if and only if there's **unanimous consent**. Here, there happens also to be the *additional* "small matter" of condition precedent regarding who has what authority to rule on *dispositive* issues, which is yet one more **unanimous-consent**-dependent matter regarding which THE OLENICKS have already asserted affirmatively and of Record their non-consent.

The fact that § 636 *exists*, i.e., the fact that "magistrates" *exist*, is ***not*** what warrants or justifies case/issue referral. No "magistrate" derives signature authority (in "civil cases") due to the mere *existence* of the § 636 office.  The mere *existence* of the § 636 office is irrelevant.

The fact that § 636(b) allows a broad *scope* of the "magistrate's" office is ***not*** what warrants or justifies case/issue referral. No "magistrate" derives signature authority (in "civil cases") due to the *scope* of the § 636 office. The *scope* of the § 636 office is irrelevant.

Why are both the *existence* and the *scope* of the office irrelevant?  Because we're talking arbitration. It's for this very reason that the ***indispensable condition precedent*** that warrants arbitration ("magistrate" participation,

referral) is the **unanimous consent** of all parties, which fact doesn't exist, here.  If and *only* if there's **unanimous consent** does either existence *or* scope even start to become in *any* way relevant.  As stated repeatedly by S.Ct.U.S. and the appellate courts addressing this very issue, **unanimous consent** *is* the **threshold** condition precedent, which is stated overtly in § 636(c).  Section 636(b) ***cannot*** be read (*competently*) in a vaccum (a volume in space completely void of everything); it ***must*** be read *in pari materia* with the whole plan regarding "magistrate" participation, including § 636(c), which broadcasts that consent is indispensable.

To say, as YEAKEL has twice said in this very matter, Docs. [11] and [15], that the ***sole*** issue is (existence and) scope of the § 636 office is to say that consent to arbitration ***may*** be compelled, thereby striking § 636(c), overruling S.Ct.U.S., and defying the fundamental rights (A) not to contract / agree / consent, (B) of access (to the § 451 judge), and (C) of Structural Due Process, en route to defying the right (D) to a "fair and impartial" trial.

### *§ 636(b), by itself, is irrelevant.*

There are several aspects to this issue of arbitration via "magistrate," the most significant of which is the threshold matter that no one may be compelled into arbitration. *Volt Information Sciences, Inc.* (Arbitration "is a matter of consent, not coercion.").  Even if the statutes authorized "magistrates" to be judge, jury, *and* executioner, no "magistrate" has authority in a "civil case" to arbitrate ***anything*** unless and until there's **unanimous consent**.

---

Because "magistrates" are "arbiters," even if § 636(c) had *never* existed, non-consent would still end the issue. Nothing, not even the change in foundational choice of law, thus the foundational change in what constitutes consent, repeals/ strikes § 636(c) from the statute. Per the § 636(c) procedures, rather than requesting affirmative assertions of consent, a court's Notices should request objections. Either way on that, ***nothing*** justifies the court's (A) failing to issue the two § 636(c) Notice, much less (B) bulldozing the objecting party's non-consent.

YEAKEL is now off this case for all purposes. Given the ***repeated*** nature of *these* criminal offenses, coupled with the confession of Record that YEAKEL is unilaterally repealing/striking § 636(c), i.e., that § 636(b) is ***all*** that matters to him, at least one benefit to repentance is official guidance to the also-and-still- "misinformed" trial judges across the country.

**Consent cannot be compelled**

Disqualification standard.

"[T]he goal of the judicial disqualification statute [28 U.S.C. § 455(a)] is to foster the appearance of impartiality." *Potashnick*, 609 F.2d at 1111.  The notion of "impartiality" derives from concepts popularly referred to collectively as the "constitution."  The right to a fair trial is, of course, a fundamentally recognized right, as reconfirmed by these disqualification rulings.

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

28 U.S.C.A. § 455(a) (unchanged since 1990).

> A recusal motion under section 455 is committed to the sound discretion of the district judge. *Chitimacha Tribe of Louisiana v. Harry L. Laws* Co., 690 F.2d 1157, 1166 (5th Cir.1982), cert. denied, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983). The question of disqualification is reviewable on a petition for writ of mandamus, but a writ will not lie in the absence of exceptional circumstances. *United States v. Gregory*, 656 F.2d 1132, 1136 (5th Cir.1981). "[T]he determination of the judge concerned should be accorded great weight, and should not be disturbed unless clearly erroneous." *Kinnear-Weed Corp. v. Humble Oil & Refining* Co., 324 F.Supp. 1371, 1385 (S.D.Tex.1969), *aff'd*, 441 F.2d 631 (5th Cir.), *cert. denied*, 404 U.S. 941, 92 S.Ct. 285, 30 L.Ed.2d 255 (1971).
>
> The issue of judicial disqualification is solely one of law. *McCuin v. Texas Power & Light* Co., 714 F.2d 1255, 1260 (5th Cir.1983). It is "a sensitive question of assessing all the facts and circumstances in order to determine whether the failure to disqualify was an abuse of sound judicial discretion." H.Rep. No. 1453, 93d Cong., 2d Sess. 3, *reprinted in* 1974 U.S.Code Cong. & Ad.News 6351, 6355. "[T]he goal of the judicial disqualification statute is to foster the appearance of impartiality." *Potashnick v. Port City Construction Co.*, 609 F.2d 1101, 1111 (5th Cir.), *cert. denied*, 449 U.S. 820, 101 S.Ct. 78, 66 L.Ed.2d 22 (1980).

*In re City of Houston*, 745 F.2d at 927–28.

[B]efore its *Caperton* decision in 2009, the Supreme Court had identified only two specific instances requiring judicial recusal on constitutional grounds: (1) "where a judge had a financial interest in the outcome of a case," *see id.* at 2259-61 (citing *Tumey*, 273 U.S. at 535), and (2) "where a judge has no pecuniary interest in the case but was challenged because of a conflict arising from his participation in an earlier proceeding," *see id.* at 2261-62 (citing *Murchison*, 349 U.S. at 133; *Mayberry v. Pennsylvania*, 400 U.S. 455, 466, 91 S. Ct. 499, 27 L. Ed. 2d 532 (1971)). In *Caperton*, the Supreme Court identified a third circumstance requiring recusal: where "the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable." *Id.* at 2259 (citing *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975)).

*Villareal*, 348 S.W.3d at 372-73.

*See also Liljeberg* (objective standard regarding appearance of impartiality); *Liteky* (ruling focuses predominantly on the "extrajudicial source" theory, which doesn't apply; *Liteky* is cited for its discussion on the scope of § 455);   *Sao Paulo Brazil* (objectivity has to be based on ***all*** the relevant circumstances);   *Caperton*, 556 U.S. at 876 (not *all* recusal / disqualification issues sound in Due Process, but *some* do) ($50 million judgment at risk; $3 million in judicial election campaign by prospective judgment debtor);   *Lavoie* (judge for one matter was also lead party plaintiff in another similar matter, giving rise to pecuniary interest conflict);   *Ward* (financial conflict and Separation of Powers implicated where decision-maker, also responsible as town executive for finances, made judicial decisions where fines from conviction benefited town general fisc);   *Mayberry* (contempt proceedings by trial judge, embroiled in bitter debate with defendants, violated Due Process);   *In re Murchison* (contempt proceedings by "one-man judge-grand jury" violated Due Process, again implicating Separation of Powers via executive and judicial activity

by same officer/authority); and   *Tumey* (village decision-maker paid from fund generated by fines produced from convictions in that same forum; funds also benefited village's general fund).

> "[I]f the question of whether § 455(a) requires disqualification is a close one, the balance tips in favor of recusal." *Nichols v. Alley,* 71 F.3d 347, 352 (10th Cir.1995).

*In re Boston's Children First*, 244 F.3d at 167.

In general, as a practical matter, judges get to be "wrong," even to a point of being abusive about it (an emotional/political factor not extant in this matter), but they *don't* get to violate *criminally* the parties appearing before them, nor do they get to restructure the judicial Power and branch to suit their habits, conveniences, or errors of judgment deriving from being "misinformed."

Since the foundational limit is "during good behavior," conduct clashing with *that* standard ***surely*** activates Disqualification as a matter of law.

<u>The crux of the matter – Sedition.</u>

*See* 18 U.S.C.A. §§ 2384, 2385 (Sedition and its conspiracy).

YEAKEL is already in an active conspiracy with Magistrate AUSTIN in at least one other matter, using "force," via court "orders," to overthrow the judicial Power and branch designed by the congress (as aided and guided, of course, by concepts referred to collectively as the "constitution").

Perhaps this is the very concern in mind expressed by the phrasing "grave constitutional questions" asserted by the 5th Cir.  *See Gomez* (citing *Ford*).

### Court "orders" constitute "force."

*Voisine*, 136 S. Ct. at 2283–84 (survey of definitions of "force" includes intentional use of power, violence, or pressure);  *Johnson*, 559 U.S. at 138-39 (confirmation of several definitions for "force," including "power, violence, or pressure directed against a person or thing").

### What's being altered, "overthrown," via "force?"

Compelled arbitration overthrows the notion of trial, which removes the judicial Power from the picture (pretty much completely).

Compelled arbitration overthrows access to the § 451 judge, which, again, removes the judicial Power from the picture.

And, for a trial judge to decide how the judicial Power and branch is to be structured overthrows the "who decides" authority traditionally vested in the congress or in the People at large.  Such "judge" places himself ***above*** his country.

### *In addition to compelled arbitration, what else is downstream?*

It follows that referring a case (ordering a case into arbitration), where at least one party has affirmatively asserted non-consent, is (A) to compel arbitration, which defies all notions of "trial," (B) to compel consent, which bulldozes the right not to contract / agree / consent, (C) to deny access to the § 451 judge, which concept despises the judicial Power, generally, and (D) to violate Structural Due Process.

These are "grave constitutional issues," and we haven't even *started* good on the Disqualification analysis. What strikes THE OLENICKS as the most serious of the consequences of compelled magistrate participation is Sedition. Where a party is compelled (by court order) to participate in an alternative form of decision-making, that court order amounts to use of "force" (color of law and office), and the result is the intentional overthrow (alteration) of the judicial structure of the existing system. That's Sedition and its conspiracy. 18 U.S.C.A. §§ 2384, 2385 (use of "force" to overthrow the Government). It takes a conspiracy, and the unconsented-to magistrate in the *pro se* "transportation" matter (another Sixth Plank policy matter), has already participated in that matter. There is, then, a very active Seditious conspiracy going on; this is just one more case in which YEAKEL has bulldozed non-consent under his myopic view that § 636(b) is all that matters. In addition to sedition, *Bivens* claims arise along with charges arising from 18 U.S.C.A. §§ 241, 242 (harassment, intimidation, and/or retaliation against those asserting rights, including the right to Structural Due Process).

---

**Consent cannot be compelled**

### *Committing Sedition constitutes "bias" as a matter of law.*

It is not objectively reasonable, or even objectively *possible*, to say that the level of bias self-confessed of Record *here* comes *within* the Due Process limits. How can a § 451 judge commit Sedition (at all, much less as a habit the way YEAKEL does) *and* claim to be objectively impartial? Objectively, since Sedition removes the § 451 judge from the *office*, how can even the mere foul stench of Sedition *not* directly impact impartiality to decide the particular *case??* The intent to obliterate non-consent is so intense that YEAKEL would rather commit Sedition (repeatedly) than comport with the restrictions on the § 451 office.

"Impartiality" is, of course, part and parcel of the "right of access." Implied in that "right of access" is access to a § 451 judge who intends to (learn and) uphold and apply the laws of the United States. Incompetence is one of these things that the Ensign overcomes on his/her way to becoming Admiral, i.e., "life" is a learning experience; we get less incompetent along the journey. So, incompetence (being "wrong") isn't the issue, here. Being ***defiant*** against the country and against its foundational, bedrock laws and policies *is* the issue here. ***Repeated, defiant*** steamrolling of **fundamental rights**, which the U.S. courts, in particular, exist to allow *protection* of, *is* the issue here. Objectively, how can an intentional rights-violator, who is a repeat offender, *possibly* qualify as impartial in a "rights" case?? How can a consent-compelling "judge" be impartial in a case that *exists* to compel consent?? His being "wrong" is inexorably related to the problem; it's impossible to avoid that aspect. *But*, there's being "wrong," and then there's committing criminal

**Consent cannot be compelled**

acts, generally, as well as acts directed against the parties appearing before the court (*due to* being "wrong"), which crosses the line and compels Disqualification.

In THE HOBBIT, and in THE LORD OF THE RINGS, there's the "one ring that rules them all." This analogy is fragile, because the solution for the collection of good guys was to destroy that one ring. So, let's keep this analogy in perspective. The counterpart to the "one ring that rules them all" in the way of fundamental rights in the present system is the "right (not) to contract / agree / consent." This *entire* system, case in point, the FCC, depends 100%, absolutely and completely, on the People's *un*-informed exercise of their "right to contract / agree / consent." So, where YEAKEL bulldozes "the one right that controls them all," and that in a case that is 100% dependent on respect for *that* fundamental right, in particular, we're *way* beyond the issue of mere incompetence. We're looking at Texarkana to El Paso as the distance between tolerable and intolerable objectivity and impartiality. YEAKEL *gets* to be "wrong," but he *doesn't* get to violate, so intentionally, even criminally, the fundamental rights of those appearing before him. Since he's *intending* to destroy the "one right that controls them all," he's strapped himself to a rocket sled full of fuel and crashed through the "intolerable" barrier at light speed.

Objectively, since he has no respect for the limits of his office, including referring without one shred of signature authority to do so, how can there *possibly* be Due-Process-compliant objective impartiality with any *remote* possibility of uniform and equal application of the law applicable to the case? He sees himself *above* the law, here.

Incurable violations of THE OLENICKS' rights.

### Right <u>not</u> to contract / agree / consent.

#### THE FUNDAMENTAL RIGHT <u>TO</u> CONTRACT.

At the very foundation of legal policy for "the State," *King* (subtly construing "the State" to be and to mean "United States," thereby approving the Exchanges necessary for "obama-care" to proceed), is the indispensable recognition of the right to contract. *Goodman* (right to contract in race discrimination context); *Plumbers' Union* (union tortiously interfered with right to contract); *American Tobacco* Co. (fundamental right of freedom to trade, anti-trust context); *Standard Oil* Co. (in discussion of anti-trust law origin, right to carry on trade or business is recognized in context of right to contract); *McLean* (the right to contract, like most rights, has limits); *Muller*, 208 U.S. at 421 ("the general right to contract in relation to one's business is part of the liberty of the individual"); *Allgeyer* (insurance context); *R.R. Co.* (limitations on regulations context (no tortious interference)).

#### THE FUNDAMENTAL RIGHT *NOT* TO CONTRACT – CONSENT CANNOT BE COMPELLED.

Inherent with the right *to* contract is the right ***not*** to contract, as is confirmed via such defenses as duress, coercion, and undue influence. The right (not) to contract has long since been recognized by both high courts in TEXAS. *Jordan*, 51 Tex. Crim. at 532, 103 S.W. at 634;  *Ex parte Smythe,* 116 Tex. Crim. at 149, 28 S.W.2d at 163;  *Storrie*, 90 Tex. at 287, 38 S.W. at 156;  *Marsh USA Inc. v. Cook* (Part II, generally, and Part II.A., in particular).

---

Motion to Disqualify (THE OLENICKS) 26
**Consent cannot be compelled**

Consent cannot be compelled. FED. R. CIV. P. 8(c) (defenses);   TEX. R. CIV. P. 94 (defenses);   *Lozman* (floating house owner could not be compelled to consent to being a regulated fiduciary per "transportation" standards);   *Horne* (USDA can't compel consent to what amounts to out-and-out theft of (CALIFORNIA) raisins));   *NFIB* (neither individuals nor STATEs may be compelled to participate in "obama-care");   *Heller* (consent cannot be compelled via ordinance to be disarmed, i.e., to waive right of self-defense, in one's own home);   *Burger King*, 471 U.S. at 486 (jurisdiction doesn't flow from fraud, undue influence, or overwhelming bargaining power);   *Ballard* (local rules don't justify (criminal) Due Process violations);   § 636(a), (c) ("by consent only");   *Gonzalez* ("If the parties consent").

*Compelled* consent is the exact *antithesis* of the very soul of "the State."  The coercive environment vitiates the very "evidence" it purports to create.  *Ohralik* (addressing coercion specifically engaged by the legal profession);   *Bates* (addressing coercion specifically engaged by the legal profession);   *Miranda v. Arizona* (coerced confession is not evidence);   *Escobedo* (same);   *Felter* (recognizing a statutory right to be free from compelled consent regarding an agreement);   1 PAGE §§ 5.7, 15.11 (coerced will is not evidence);   BOGERT § 42 at 434, § 44 at 452 and n.16 (coerced trust is not evidence);   *Pollock I*, 157 U.S. at 553-54 (1st ¶ of opinion) (non-consent by even one beneficiary prevents amendment to trust agreement) (*see also Pollock II* (expands upon the original ruling, reiterates the "direct tax" concept, vacates the original ruling, reverses the ruling(s) below, and remands with instructions to grant the relief that the Plaintiff had requested));

*Arnold* (vacated per *Booker*) ("evidence" (and never-before-heard-of **charges**) not presented at trial and not agreed to at sentencing is (are) inadmissible for sentencing);   *Lozman* (at the heart of Part IV is the response to the communists among us who want a municipality or STATE agency to have authority to compel their political targets to consent to being regulated – "transportation" is "subjective" in that only the political target may say, by his conduct or his commercial consent, whether s/he's consenting to being regulated; i.e., the target has the "right (not) to contract" and the "right (not) to exercise a privilege," etc.).

Since this is a "civil case," not an "administrative appeal," THE OLENICKS have a say in whether a magistrate has signature authority.  § 636(c).

The Court is also very clear that the 1979 codification of the somewhat expanded role of the magistrates has "[a] critical limitation." *Gomez*, 490 U.S. at 870. "A critical limitation on this expanded jurisdiction is consent." *Id.* (limit of scope of magistrate's (consent-based) authority is a jurisdictional question – "prejudice" isn't relevant).

> The Government concedes, as it must, that errors occurring during jury selection may be grounds for reversal of a conviction. Brief for United States 44, n. 41 (citing *Batson v. Kentucky*, 476 U.S. 79, 85, 106 S.Ct. 1712, 1716, 90 L.Ed.2d 69 (1986); *Witherspoon v. Illinois*, 391 U.S. 510, 522, 88 S.Ct. 1770, 1776, 20 L.Ed.2d 776 (1968)). Yet it argues that any error in these cases was harmless because petitioners allege no specific prejudice as a result of the Magistrate's conducting the *voir dire* examination. Brief for United States 42-45. We find no merit to this argument. Among those basic fair trial rights that " 'can never be treated as harmless' " is a defendant's "right to an impartial adjudicator, be it judge or jury." *Gray v. Mississippi*, 481 U.S. 648, 668, 107 S.Ct. 2045, 2057, 95 L.Ed.2d 622 (1987) (quoting *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967)). Equally basic is a defendant's right to have all critical stages of a criminal trial

**Consent cannot be compelled**

conducted by a person with jurisdiction to preside. Thus harmless-error
analysis does not apply in a felony case in which, despite the defendant's
objection and without any meaningful review by a district judge, an officer
exceeds his jurisdiction by selecting a jury.

*Gomez*, 490 U.S. at 876.

THE OLENICKS are hard pressed to limit *Gomez* solely to the criminal

context in which that analysis arises. While the historical discussion of the civil

matter jurisdiction is possibly dictum, *Gomez*, 490 U.S. at 859-71, the Court is

exceedingly clear about the indispensable nature of "consent." The Court is very

clear, for example, in its discussion of the conflict between the Second Cir. and the

Fifth Cir., *id.* at 861-62, that the Fifth Cir.'s view, regarding what may provoke

"grave constitutional questions," is avoided where "consent" is necessarily construed

into the statute. Here's how that's done in the Fifth Cir.:

> Today the government argues that Congress intended by the Federal
> Magistrates Act to grant to judges of United States District Courts authority
> to delegate to a magistrate as an "additional duty" the power to preside over
> the selection of the jury in felony cases. Given the grave constitutional
> questions such a construction would pose and the history and structure of the
> legislation creating the office of United States Magistrates, we are not
> persuaded of such congressional purpose.
>
> We hold that the district court erred in allowing a magistrate to preside
> over jury selection. **Neither the government nor the defendant objected
> to the substitution of the magistrate, however.** Persuaded that the error
> was harmless beyond reasonable doubt and that the trial was fundamentally
> fair, we affirm the conviction.

*Ford*, 824 F.2d at 1430-31 (jury selection, felony matter, magistrate participation,

*but no objection*, i.e., consent by silence) (emphasis added).

The Fifth Cir. wanted to avoid provoking "grave constitutional questions"

---

**Consent cannot be compelled**

regarding what is and what is not within a magistrate's authority. *Ford*. They even note, in 1987, the following in their review of the legislative history. "Finally, Congress in the fourth part [of the 1976 amendments to the Magistrates Act of 1968] detailed for the first time procedures and circumstances under which magistrates could, **with the consent of the parties**, try civil cases." *Id*. at 1434 (emphasis added). In *Ford*, the otherwise unauthorized magistrate participation was allowed, not because it's possible to compel, but rather because it was optional, and there was no objection. *Id*. at 1430.

The Seventh Cir. confirms the consequences of non-consent in a back door manner. In *Kalan*, 274 F.3d at 1151, the court was asked to review on appeal a denial of relief requested under Rule 60(b)(5) and (6). They concluded that they lacked jurisdiction to do so. In other words, they saw no valid order to review, due to the lack of consent to the magistrate who entered the ruling. *Kalan* analyzes, in relevant part, that "final judgment" matter in the context of consent to magistrate participation as follows:

> Further, we have emphasized repeatedly **that valid consent is essential** to upholding § 636(c)'s constitutionality against arguments that it improperly vests the judicial power of the United States in non-Article III judges. *Id*. [*See Drake v. Minn. Mining & Mfg. Co.*, 134 F.3d 878, 883 (7th Cir.1998); *Mark I, Inc. v. Gruber*, 38 F.3d 369, 370 (7th Cir.1994)] (collecting cases); *see also Jaliwala v. United States*, 945 F.2d 221, 224 (7th Cir.1991) ("[T]he standards regarding the validity of consent must be carefully observed, for as we have previously noted **valid consent is the linchpin of the constitutionality of 28 U.S.C. § 636(c).**") (citation and internal quotation omitted).

*Kalan*, 274 F.3d at 1152 (emphasis added).

The Seventh Cir. cites to the Fifth Cir., and in *Mendes Junior Int'l Co.*, the Fifth Cir. cites the plain language of § 636(c)(1), i.e., which overtly states the indispensable need for consent.  Ultimately, given the lack of consent to magistrate participation, the Seventh Cir. found no ruling to review; hence, no appellate jurisdiction.

*See also Gonzalez* (May 12) ("If the parties consent …."); *Gamba* (May 19) (9th Cir. affirmed Mont. trial court, 483 F.3d 942, despite objection to non-consent – **vacated and remanded** per *Gonzalez*); *Reynaga* (*overruling* trial court policy that allowed referral without consent and magistrate participation).

In short, for "civil cases," the ***entirety*** of a magistrate's signature authority depends 100% on **unanimous consent**.  Since THE OLENICKS don't consent, there can't even be a lawful ***referral*** of anything at any time.  YEAKEL's "referral" rather squarely violates § 636(c)(1), (c)(2), both substantively and procedrually, as well as the "consent is required" concept so plainly articulated in *Gomez, Kalan, and Jaliwala*. YEAKEL never had jurisdiction to "refer" any issue in this case.

### *Right of access.*

"Access" has a slew of different meanings.  Here, "access" means "access to the § 451 judge." Where the § 451 judge shirks his duty and slips the case out the back door of the courthouse to someone else, e.g., an arbiter, access to the § 451 judge is denied.  When any decision is made by some other decision-maker, access to the § 451 judge is denied. *Cf. Christopher; Boddie.*

---

### *Right to Structural Due Process.*

There's a reason for the Nomination, Confirmation, and Appointment procedure. It distinguishes § 451 judges from all other decision-makers.

There's a difference between non-judicial decision-making (arbitration) and judicial decision-making (trial). The present structure presumes trial, and any other means of dispute resolution arises only where there's consent. *Volt Information Sciences, Inc.* (Arbitration "is a matter of consent, not coercion.").

Some more flagrantly at issue here is the structural difference between legislative Power and judicial Power. While the cases cited above prohibit the exercise of *executive* and judicial Power in the same case, *this* matter is of a very different type. Here, YEAKEL intends to exercise *legislative* Power, whether that which vests in the congress or, perhaps, in the People at large, by altering the present judicial Power to permit going where this nation has never gone before. It's the *legislative* Power that defines the scope of the judicial Power, and YEAKEL intends to redefine the judicial Power so as, effectively, to put in *his* hands the process of deciding who gets to exercise § 451 authority. Per YEAKEL's plan, and he's just one of *many* trial judges across the nation who has actually implemented this plan, we're talking overthrowing either (A) the individual's right not to contract / agree / consent or (B) the country's (legislative) right / Power to establish the (executive / legislative) process by which vesting of § 451 authority happens.

The only people in the position to authorize non-judicial decision-making are the parties. That's not gonna change. There's nothing about compelling a party to

**Consent cannot be compelled**

a "civil case" into arbitration that either creates arbitration authority or diminishes judicial responsibility in the matter.  And, the *process* by which the judicial Power is vested *ain't* changing via *judicial* signature.  Such a foundational as that takes a "committee appointed by the whole" (nation, that is).  Not that it *couldn't* change (the (Soros-financed?) communists are sure throwing everything they've got at such, these days); just that it's not happening unilaterally via a trial judge's signature. Since THE OLENICKS have never consented to non-judicial decision-making, what YEAKEL has done amounts to unilateral delegation of his § 451 signature authority, a matter already long-since ruled on as illegal. *Parker,* 855 F.2d at 1524 (referring to the very self-apparent rendering of the opinion by the law clerk, who is neither nominated by the President nor confirmed by the Senate).

The present structure does not allow (a) compelled arbitration as a substitute for trial, (b) judicial rewriting of the procedures for vesting of judicial Power (which is a legislative Power activity), or (c) delegation of § 451 signature authority.  All of these intended results violate THE OLENICKS' rights to Structural Due Process.

### Right to a fair trial (fundamental and statutory procedural Due Process).

The traditional concept is "fair and impartial."

"It is axiomatic that '[a] fair trial in a fair tribunal is a basic requirement of due process.'" *Caperton,* 556 U.S. at 876 (citing *Murchison,* 349 U.S. at 136).  Here, as in *Withrow,* 421 U.S. at 47, we have the need to analyze this very question: whether, "under a realistic appraisal of psychological tendencies and human

weakness," the interest "poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Withrow,* 421 U.S., at 47.

How can there possibly be any remotely objective determination of fundamental fairness suitable to Due Process standards where THE OLENICKS have overtly asserted their non-consent to non-judicial decision-making in this "civil case" from Day One, and YEAKEL defiantly entered a referral "order," anyway? How can there be an objective determination of fundamental fairness where YEAKEL picks and chooses the law applicable to himself, thus to THE OLENICKS?

Criminal violations of the law.

### *Intentional violation of right not to contract / agree / consent.*

All individuals have a right not to contract / agree / consent. Since it's a fundamental right, violation of that right triggers application not only "constitutional tort" claims, i.e., *Bivens* claims, on the civil side, but also claims arising under 18 U.S.C.A. §§ 241 and 242 (harassment, intimidation, or retaliation against those who assert their rights).

### *Intentional violation of right of access to the courts.*

All individuals have a right of access to the courts. In this context, that means access to those with § 451 signature authority. Obviously, any illegal referral violates this fundamental right of access, which gives rise to *Bivens* claims and claims arising under 18 U.S.C.A. §§ 241 and 242.

**Consent cannot be compelled**

### *Intentional violation of right to a fair trial.*

All individuals have a right to a fair trial.  What seems to exist in epidemic proportions across this system is the forgetting that trial starts at the time of *filing*, not at the time of jury selection.  Thus, any illegal referral violates this fundamental right of a fair trial, which gives rise to *Bivens* claims and claims arising under 18 U.S.C.A. §§ 241 and 242.

### *Making and using false documents.*

YEAKEL has both made and used false documents, in violation of 18 U.S.C.A. § 1001, and 18 U.S.C. § 371.  Making a "false document" is accomplished by making the illegal referral "order," "using" it happens when it's signed and filed. Doc. [11]. He's also "justified" himself by the second order, also made illegally and also used illegally. Doc. [15].

Should the unconsented-to magistrate also participate, then there'll be more making and using of false documents.

### *Falsification of Records.*

YEAKEL has falsified this Record, in violation of 18 U.S.C.A. § 1519, and 18 U.S.C.A. § 371, by purporting to have signature authority to "order" referral in the document he's caused to be filed.

Should the unconsented-to magistrate also participate, then there'll be more falsification of this Record, for there's no signature authority in such magistrate.

### Record tampering.

YEAKEL has tampered with this Record, in violation of 18 U.S.C.A. § 2071, and 18 U.S.C.A. § 371, by "ordering" referral in the face of THE OLENICKS' overt non-consent to non-judicial decision-making.

Should the unconsented-to magistrate also participate, then there'll be more Record tampering, for there's no signature authority in such magistrate.

### Mail fraud.

YEAKEL has delivered (or caused to be delivered) his illegal referral orders by use of the mail system. *See* 18 U.S.C.A. §§ 1341, 1349 (mail fraud and its related conspiracy).

Should the unconsented-to magistrate also participate, then there'll be more mail fraud.

### Witness intimidation.

THE OLENICKS are witnesses against the compelled consent policy and paradigm, not only regarding the modus operandi of the FCC but also regarding magistrate participation.  YEAKEL has now acted twice in this matter in blatant defiance of THE OLENICKS' non-consent to non-judicial decision-making.  *See* 18 U.S.C.A. §§ 1512(b), (c), and (k).  *See also* 18 U.S.C.A. §§ 1513(b), (e)[2], and / or 18 U.S.C.A. §§ 1513(e)[1] and (e)[2]  (retaliation).

Should the unconsented-to magistrate also participate, then there'll be more witness intimidation (and retaliation).

### *Joining the original conspiracy against THE OLENICKS.*

Given YEAKEL's independent criminal acts against THE OLENICKS, YEAKEL has now joined the underlying conspiracy against THE OLENICKS, which involve the intentional violations of rights documented in their Orig. Counter-claim.  That conspiracy involves violations of the laws of TEXAS and of the UNITED STATES.

Should the unconsented-to magistrate also participate, then there'll be at least one more conspirator in the underlying conspiracy against THE OLENICKS.


### *Intentional violation of right to Structural Due Process.*

On top of all of the foregoing is the fact that all individuals have a right to Structural Due Process.  Down this path, let's review the poisoning case out of PENNSYLVANIA a few years back in which the defendant was charged not under the state's (attempted) homicide laws but rather under a chemical weapons ban treaty.  What was really at issue in that great, obama-era, prosecutorial experiment?  What was at issue was the question of whether a group of internationalists could construct a way to get homicide matters, generally, removed from state jurisdiction and rendered (exclusively) subject to the national judicial power.  Where the Common Law standard is that instrumentality is completely irrelevant, we're already experiencing an erosion of that policy.  Where the homicide scheme involves an airplane or an explosive device, such homicide matters are presently investigated and prosecuted not by the state authorities but by the

**Consent cannot be compelled**

national authorities.  There seems also to be a concept that where the victim is an employee of some national law enforcement office or department, those matters are now investigated and prosecuted by the national authorities, as well.

What stopped the internationalists in their tracks?  Structural Due Process (*and* informed defense counsel, *and* the S.Ct.U.S.).

We're talking, of course about the *Bond* case(s), in particular *Bond II*. The point is that the Supreme Court Justices have been very clear that they will insist upon respect for Structural Due Process.  The line *there* distinguishes the state systems from the national system.  Here, it's the simultaneous exercise of judicial and legislative Power that's at issue.  Yet, into the teeth of the clear policy that keeps each branch within its proper confines, § 451 trial judges from coast to coast, YEAKEL among them, purport to be able to compel all parties to consent to arbitration. "Orders" constitute "force," and the use of force to alter the judicial structure is the use of force to overthrow the judicial Power and branch in its present design.  *See* 18 U.S.C.A. §§ 2384, 2385 (Sedition and its conspiracy).


### *Due Process says there's a limit.*

As confirmed in the case-specific matters ruling on Disqualification issues, S.Ct.U.S. is consistent in ruling that Due Process does establish limits.  The right to a fair trial in the civil context has to be just as protected as each stage of criminal cases, especially where what's at issue is a matter of lack of subject matter jurisdiction not only in the assigned judge to enter a referral at all but also in the

---

Motion to Disqualify (THE OLENICKS)                                                    38
**Consent cannot be compelled**

non-consented-to magistrate to participate in any way, shape, manner, or form. Exercising signature authority he never had, YEAKEL has once again crashed through the Due Process barrier as if strapped to a rocket sled full of fuel.  To illustrate the point, he could be a bank robber and not *necessarily* be "biased" in *this* matter, but because THE OLENICKS are the ***target*** of the plethora of criminal activity committed by the bench, it's simply impossible to apply any remotely objective standard *and* to conclude that YEAKEL is "impartial" for purposes of Disqualification analysis.


## Summary and Conclusion

Objective standard.

We're talking about an objective view regarding the right to a "fair and impartial" tribunal.


YEAKEL has no jurisdiction to refer anything, much less dispositive issues.

This is a "civil case," not an "administrative appeal."  Section 636(b) is not an island.  It must be read *in pari materia* with § 636(c) .  There can't even be a "referral" without there being consent *of all parties* determined from the Record. THE OLENICKS objected on the face of the first document filed, as well as on all subsequent documents filed.  Thus, YEAKEL never had jurisdiction to "refer" any issue in this case, much less dispositive issues.

**Consent cannot be compelled**

<u>YEAKEL is on Notice of the crimes involved.</u>

*See* Perkins v. Brewster, No. 1:17-CV001173-LY (W.D. Tex., Austin), in which Perkins (also) went to extreme efforts to point out the problems associated with bulldozing non-consent to non-judicial decision-making via detailing the crimes, in addition to Sedition, that arise from compelled consent (to arbitration).

Despite ***all*** the Notices (perhaps because they are being asserted by *pro se* parties), YEAKEL asserts that one is "misinformed," Doc. [15], where one reads § 636 as a whole rather than, as YEAKEL does, just § 636(b).

Disqualification isn't an issue of judicial incompetence. It's an issue of bias. Where first thing out of the chute the assigned judge bulldozes THE OLENICKS' objection to non-judicial decision-making, and all the rights included, by issuing a facially illegal referral "order," YEAKEL's judicial incompetence is surpassed only by his "invitation" to the unconsented-to magistrate to commit a slew of crimes in concert, league, and conspiracy with YEAKEL, chief among them Sedition. A judge that goes that far out of his way to violate not only the law but also the rights of the party appearing before him is "biased," as a matter of law.

<u>YEAKEL is compelling consent, and that in the context of FCC's case, which, itself, exists to garner judicial approval for compelling consent.</u>

Where YEAKEL has, once again, rushed to compel consent, under color of law and office, he's necessarily Disqualified from *this* case, which case exists in order to compel THE OLENICKS to consent to being regulated under Sixth Plank policy.

For the reasons addressed, THE OLENICKS question YEAKEL's "impartiality" regarding this case.


**Request for Relief**

THE OLENICKS request that YEAKEL be declared Disqualified from this case.

Submitted by,

*Walt Olenick*
/s/ Walt Olenick
WALTER OLENICK
P.O. Box 7486
Austin, Texas  78713

*M. Rae Nadler Olenick*
/s/ M. Rae Nadler-Olenick
M. RAE NADLER-OLENICK
P.O. Box 7486
Austin, Texas  78713


### § 1746 Declaration – WALTER OLENICK

Per 28 U.S.C. § 1746, and under the laws of perjury of the United States, I, WALTER OLENICK, depose and declare (or certify, verify or state), that I am at least 21 years of age, in fact, I am more than 65 years of age, that I am competent to make this Affidavit / Declaration, that I have personal knowledge of these facts, and that these facts are true and correct.

The facts asserted in this motion are true and correct.

Neither my wife nor I have ever consented, consent now, or will ever be consenting to magistrate participation for any phase of this matter, whether pre-trial or trial.

Further, Declarant sayeth not.

Executed on this the 4th day of December, 2018

*Walt Olenick*
/s/ Walt Olenick
WALTER OLENICK, Declarant

---

### § 1746 Declaration – M. RAE NADLER-OLENICK

Per 28 U.S.C. § 1746, and under the laws of perjury of the United States, I, M. RAE NADLER-OLENICK, depose and declare (or certify, verify or state), that I am at least 21 years of age, in fact, I am more than 65 years of age, that I am competent to make this Affidavit / Declaration, that I have personal knowledge of these facts, and that these facts are true and correct.

The facts asserted in this motion are true and correct.

Neither my husband nor I have ever consented, consent now, or will ever be consenting to magistrate participation for any phase of this matter, whether pre-trial or trial.

Attached are true and correct copies of the two referral orders signed by YEAKEL in this matter, namely Docs. [11] and [15].

Further, Declarant sayeth not.

Executed on this the 4th day of December, 2018

/s/ M. Rae Nadler-Olenick
M. RAE NADLER-OLENICK,
Declarant

### CERTIFICATE OF CONFERENCE

By our signatures below, we certify that we've mailed a true and correct copy of this motion, with the copies of the two orders, to AUSA WRIGHT on Tuesday, Nov. 27, 2018.

It's now Tuesday, Dec. 4, and the response (by mail) is as follows:

(The silence of the crickets.)  The motion, presumed opposed, is submitted.

/s/ Walt Olenick                          /s/ M. Rae Nadler-Olenick
WALTER OLENICK                       M. RAE NADLER-OLENICK

---

**Consent cannot be compelled**

## CERTIFICATE OF SERVICE

By my signature below, I certify that on or about this 4th day of December, 2018, I have served the final version of this motion on the following by Priority Mail or Certified Mail:

GARY W. WRIGHT
Assistant United States Attorney
601 N.W. Loop 410, Suite 600
San Antonio, Texas 78216

*M. Rae Nadler-Olenick*

/s/ M. Rae Nadler-Olenick
M. RAE NADLER-OLENICK


Also, on or about Dec. 4, 2018, I've served courtesy copies of this motion by email, where possible, or by mail, as follows:

Hon. ORLANDO L. GARCIA, Chief J.
c/o Ms. JEANNETTE CLACK, Clerk
U.S. District Court, W.D. Tex.
655 E. Cesar E. Chavez Blvd., Room G65
San Antonio, TX 78206

Gen. JOHN F. KELLY (USMC, Ret.)
Chief of Staff, Whitehouse
1600 Pennsylvania Avenue, N.W.
Washington, DC 20500

Hon. JAMES C. DUFF, Dir.
Admin. Office, U.S. Courts
One Columbus Circle, NE
Washington, D.C. 20544

Hon. MATTHEW G. WHITAKER
Acting Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

*M. Rae Nadler-Olenick*

/s/ M. Rae Nadler-Olenick
M. RAE NADLER-OLENICK

FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

2018 OCT 15  PM 1: 19

CLERK OF U.S. DIST. COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

UNITED STATES OF AMERICA,           §
                      PLAINTIFF,     §
                                     §
V.                                   §       CIVIL NO. A-18-CV-00675-LY
                                     §
WALTER OLENICK AND                   §
M.RAE NADLER-OLENICK,                §
                      DEFENDANTS.    §
                                     §

### ORDER

IT IS HEREBY ORDERED that Defendants *pro se* Walter Olenick and M. Rae Nadler-Olenick's Respondents' Rule 12 Motions filed September 13, 2018 (Clerk's Document No. 8), Plaintiff United States's Response and Objection to Defendants' Rule 12 Motion to Dismiss filed September 26, 2018 (Clerk's Document No. 9), and any reply that may be filed, are **REFERRED** to United States Magistrate Judge Mark Lane for report and recommendation.  *See* 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72; Loc. R. W. D. Tex. Appx. C, Rule 1(d).

SIGNED this _____ day of October, 2018.

_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

18 OCT 31  PM 4: 18

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
CLERK

UNITED STATES OF AMERICA,
          PLAINTIFF,

V.

WALTER OLENICK AND
M.RAE NADLER-OLENICK,
             DEFENDANTS.

§
§
§
§
§
§
§
§
§

CIVIL NO. A-18-CV-00675-LY

## ORDER

Before the court in the above styled and numbered cause are the Defendants *pro se* Walter Olenick and M. Rae Nadler-Olenick's (the "Olenicks") Motion to Strike/Withdraw Referral Order filed October 30, 2018 (Clerk's Document No. 13) and Plaintiff United States of America's Motion to Dismiss Respondents' Original Counterclaim filed October 23, 2018 (Clerk's Document No. 12). Through their motion, the Olenicks contend that as they have not consented to proceeding before a United States Magistrate Judge, the court's referral Order, signed October 15, 2018 (Clerk's Document No. 11), improperly referred several pending matters in this action to the magistrate judge for report and recommendation. The Olenicks are misinformed. This court, *inter alia*, may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition by the judge of the court, of any motion." 28 U.S.C. § 636(b)(1)(B); *see also* Fed. R. Civ. P. 72(b)(1). It is pursuant to these provisions, that the court has referred matters pending in this action to the magistrate judge.

**IT IS ORDERED** that Defendants *pro se* Walter Olenick and M. Rae Nadler-Olenick's Motion to Strike/Withdraw Referral Order filed October 30, 2018 (Clerk's Document No. 13) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff United States of America's Motion to Dismiss Respondents' Original Counterclaim filed October 23, 2018 (Clerk's Document No. 12) and any response or reply that may be filed, are **REFERRED** to United States Magistrate Judge Mark Lane for report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72; Loc. R. W. D. Tex. Appx. C, Rule 1(d).

SIGNED this _____ day of October, 2018.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

2