# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| Plaintiff, § | |
| V. § | |
| § | 18-CV-675-LY |
| WALTER OLENICK and M. RAE § | |
| NADLER-OLENICK, § | |
| Defendants. § | |

## REPORT AND RECOMMENDATION OF
## THE UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE:

Before the court are Respondents' Rule 12 Motions (Dkt. #8), the United States' Motion to Dismiss Respondents' Original Counterclaim (Dkt. #12), and all related briefing.[1] After reviewing the pleadings, the relevant case law, and the entire case file, the undersigned issues the following Report and Recommendation to the District Court.

**I.  BACKGROUND**

The United States brings this case against Walter Olenick and M. Rae Nadler-Olenick (the "Olenicks") to recover a forfeiture penalty ("Forfeiture Order") assessed by the FCC for their operation of an unlicensed radio station in violation of the Communications Act of 1934, as amended, 47 U.S.C. § 151, et seq. (the "Act"). Dkt. #1. Throughout the FCC proceeding, the Olenicks did not deny ownership or operation of the radio station but contend the FCC has no authority to enforce the Act because the FCC lacks any "commercial nexus" to the Olenicks. *See* Dkt. #1-4, #1-7, #1-9 ("In essence, even to this very day, not only has your company confessed

---

[1] The motions were referred by United States District Judge Lee Yeakel to the undersigned for a Report and Recommendation as to the merits pursuant to 28 U.S.C. § 636(b), Rule 72 of the Federal Rules of Civil Procedure, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

1

having no commercial nexus regarding either of us but also there's *still* no evidence of any agreement, much less one that obligated either of us to any line of conduct or avoidance of conduct on which you're asserting your (company's) claim."), #1-11, #1-13 ("You have no commercial nexus to enforce, and your (company's) continued intent to compel one, as your letter proves, is a conspiracy now involving you to harass us and to intimidate us for and in retaliation of our very well documented assertion of our 'right not to contract.'").

In a motion that is 54 substantive pages, far exceeding the Local Rule's 20-page limitation, *see* L.R. CV-7(d)(3), the Olenicks move to dismiss the Complaint on several grounds. First, they argue they have not consented to being regulated.[2] Dkt. #8 at 2, 12 ("Regs don't apply just because they exist. Regs apply if and only if they've been agreed to."). The Olenicks argue that because they did not violate Title 18, the United States' claim against them depends on the law of trusts and their violation is of "a proposed trust agreement," which they decline to accept. Dkt. #8 at 26. On this basis, they also argue that the statute of frauds bars the claim against them because for a trust to exist, there must be a writing and no writing exists. Similarly, the Olenicks argue that the court has no personal jurisdiction over them because they cannot be liable in a fiduciary capacity. The Olenicks also argue that the United States has failed to state a claim against them on this basis.

The Olenicks also move to dismiss because not all necessary parties have been joined. They admit they own the land, the building on which the radio tower is located, and the tower itself, but they contend they do not own the frequency at issue. Dkt. #8 at 2 ("THE

---

[2] They describe that "*All* the agencies are 'armed' with ways of seducing their respective 'targets' into the necessary commercial nexus. While the methods vary per agency, some, including the FCC, employ procedural traps. The main trap used by the FCC is the 'invitation' to participate in the FCC-sponsored arbitration. . . . Thus, where the agency's 'correspondence' includes a 'case style' as a header, that's the agency's 'invitation' to agency-sponsored arbitration. But, a response *sans* that 'case style' avoid both 'consent by silence' *and* 'consent via participation in arbitration.'" Dkt. #8 at 31-32.

OLENICKCS are the land owners, thus the building and (antenna) tower owners."). They further argue that previous litigation was brought against other entities, and that litigation, which did not include the Olenicks, determined the ownership of the frequency. Likewise, they contend claim and issue preclusion bars the claim against them. Finally, the Olenicks argue the United States has failed to state a claim against them on this basis.

The Olenicks filed Counterclaims against the United States. Dkt. #10. They assert Counterclaims against the United States for bringing a frivolous suit against them, violating their right not to contract or consent to the FCC, violating their right of association because they claim the United States' motivation is to take Alex Jones' programming off the air, and violating their right to contract with Alex Jones. The United States moves to dismiss the Counterclaims, arguing that it has not waived sovereign immunity; the Counterclaims are direct challenges of existing laws, regulations, or FCC decisions that are within the exclusive jurisdiction of the Federal Court of Appeals; and the Olenicks have failed to state a claim upon which relief may be granted. Dkt. #12. The Olenicks filed a "Status Report" to the United States' motion indicating they have a response to the motion, which would be beneficial for the resolution of the matter and would involve discovery. Dkt. #14. This Status Report appears to be missing a second page, in which the Olenicks would explain why they "are very much constrained from any further [argument]." Dkt. #14 at 1. However, the undersigned's review of the pleadings, briefing, and the law informs the court that discovery is not relevant to resolve these issues, which are legal in nature.

## II.   STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(1) must be considered before any other challenge, because a court must have jurisdiction before determining the validity of a claim.

*Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994). In ruling upon such motion, a district court is free to weigh the evidence and satisfy itself as to its power over the case. *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992). In making this ruling, the district court may rely upon: (1) the complaint alone, (2) the complaint supplemented by undisputed facts in the record, or (3) the complaint supplemented by undisputed facts in addition to the court's resolution of disputed facts. *Barrera–Montenegro v. United States and Drug Enforcement Admin.*, 74 F.3d 657, 659 (5th Cir. 1996).

The standard of reviewing a motion to dismiss pursuant to 12(b)(1) depends upon whether the defendant makes a facial or factual challenge to the complaint. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). When the defendant makes a facial attack by the mere filing of a Rule 12(b)(1) motion, the trial court looks to the sufficiency of the plaintiff's allegations, which are presumed to be true. *Id*. When the defendant makes a factual attack by providing affidavits, testimony, and other evidence challenging the court's jurisdiction, the plaintiff must submit facts in support of the court's jurisdiction and thereafter bear the burden of proving that the trial court has subject matter jurisdiction. *Id.*

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. v. Twombly*,

550 U.S. 544, 555-57 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. The Supreme Court has made clear this plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard is properly guided by "[t]wo working principles." *Id*. First, although "a court must 'accept as true all of the allegations contained in a complaint,' that tenet is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. Second, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. Thus, in considering a motion to dismiss, the court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, "the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)).

### III.   ANALYSIS

#### A.   The Olenicks' Motion to Dismiss the Complaint

A district court's subject matter jurisdiction in a case to enforce an FCC forfeiture order under section 504(a) is extremely limited. *Radar Solutions, Ltd. v. U.S. F.C.C.*, 368 Fed. App'x 480, 458 (5th Cir. 2010) ("The district courts, however, have a sliver of the jurisdictional pie for enforcement of FCC orders imposing a monetary forfeiture penalty."). Only proceedings to enforce and recover on a monetary forfeiture order are to be brought by the government in

district court. *U.S. v. Stevens*, 691 F.3d 620, 622 (5th Cir. 2012); 47 U.S.C. § 504(a). Section 504(a) permits broadcasters an opportunity to present a factual defense to enforcement of the forfeiture. *Stevens*, 691 F.3d at 622; 47 U.S.C. § 504(a); *see also Radar Solutions, Ltd.*, 368 Fed. App'x at 485 ("The district court can hear a factual dispute as to whether a defendant has violated the [FCC]'s rules."). In contrast, "[a]ny proceeding to enjoin, set aside, annul, or suspend any order of the [FCC]" may only be brought in the court of appeals, which "has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the [FCC] made reviewable by section 402(a) of title 47." *Stevens*, 691 F.3d at 622; 28 U.S.C. § 2342.

"Therefore, to permit a broadcaster to challenge the legal validity of a forfeiture order as a defense to the government's enforcement action would permit it an end run around the 'court[s] of appeals['] . . . exclusive jurisdiction . . . to determine the validity of' final FCC forfeiture orders, *see* 28 U.S.C. § 2342, and enable them to raise such challenges much later than they would have been required to had they followed the proper channels, *see id.* § 2344." *Stevens*, 691 F.3d at 622-23. "[I]t would be anomalous to permit an unlicensed broadcaster to circumvent the congressionally-mandated judicial review scheme and corresponding deadlines simply because the government must go to district court to recover the monetary penalty." *Id.* at 623. Thus, "[p]ersons aggrieved by a final FCC forfeiture order must raise legal challenges to the validity of the order in a timely petition for review in the appropriate court of appeals," and a district court has no jurisdiction to consider such defenses. *Id.*; *see* 47 U.S.C. § 402(a); 28 U.S.C. § 2344.

Accordingly, this court has jurisdiction to hear the claim asserted in the Complaint to enforce the Forfeiture Order, but the court lacks jurisdiction to consider the Olenicks' legal

6

challenges to the Forfeiture Order, including their arguments that they have not consented to being regulated and their challenges that the regulation is not valid as applied to them.

To the extent the Olenicks argue that this court lacks personal jurisdiction over them, their argument is baseless. Specific jurisdiction is a claim-specific inquiry, and it exists when the defendant's contacts give rise to or are directly related to the cause of action. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). The Olenicks admit they own the property and tower from which the broadcasting at issue occurred. The Complaint describes the property as "located at 1205 E. 52nd St., Austin, Texas, 78723." Dkt. #1 at ¶ 14. The Olenicks make no arguments that they do not live in Austin, Texas or that asserting personal jurisdiction over them would offend traditional notions of fair play and substantial justice. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999).

The Olenicks argue the Complaint must be dismissed because "in 2011, this very court judicially determined (declared) the ownership, which didn't include THE OLENICKS. See Nos. 1:10-CV-00957-SS (R. Frank), 1:10-CV-00964-SS (The Stevens) (W.D. Tex.)." Dkt. #8 at 62. The court takes judicial notice of those cases. The District Court summarized the facts of those cases:

> The evidence before the Court in this case and related Cause Number A-10-CA-964-SS illustrates Frank's dedication to continued violations. It is apparent Frank has colluded with Jerry and Deborah Stevens to operate their illegal radio station since at least July 2009. After the FCC detected the signal emanating from Frank's residence on July 22, 2009 and August 3, 2009, the operation was moved to the Stevens' home, where it appears to have remained until some time after June 24, 2010, after which there is an approximately 1-year gap in the evidence about who was operating the pirate radio station. However, whether to avoid detection and government regulation or for other reasons, by May 27, 2011, the transmissions were once again emanating from Frank's home.

*United States v. Frank*, 1:10-CV-957-SS, Dkt. #47 at 5 n.5; *see United States v. Stevens*, 1:10-CV-964-SS, Dkt. #62 at 7 n.5. In both cases, the District Court upheld the forfeiture. The court

also takes judicial notice of *Stevens v. Calvary Chapel of Twin Falls, Inc.*, 1:15-CV-257-SS (filed April 6, 2015), in which Deborah Stevens sued Calvary Chapel for broadcasting over radio frequency 90.1 FM in Austin, Texas despite her admission Calvary Chapel had been licensed by the FCC to do so. Dkt. #24 at 2 in 1:15-CV-257-SS.  The District Court dismissed that suit as frivolous.  Dkt. #24 in 1:15-CV-257-SS. None of those parties were included in the Forfeiture Order at issue here, Dkt. #1-8, nor do any of those cases adjudicate ownership of the tower and antenna used to broadcast the transmission on August 12, 2013 and November 19, 2013, which are at issue here.  Dkt. #1 at ¶¶ 14, 18, Dkt. #1-8 at ¶ 3. Accordingly, the Olenicks have not shown a necessary party has not been joined in this case.  *See* FED. R. CIV. P. 19(a)(1).

Finally, to the extent the Olenicks move to dismiss the Complaint because it fails to state a claim on which relief can be granted, their argument—which is based on their lack of consent—fails.  The Complaint is sufficiently pleaded under Rule 8, *Twombly*, and *Iqbal*.

### B. The United States' Motion to Dismiss the Olenicks' Counterclaims

The Olenicks assert Counterclaims against the United States for bringing a frivolous suit against them, violating their right not to contract or consent to the FCC, violating their right of association because they claim the United States' motivation is to take Alex Jones' programming off the air, and violating their right to contract with Alex Jones.

The Olenicks filed no substantive response to the United States' motion to dismiss their counterclaims.  Accordingly, the United States' motion should be granted as unopposed.  L.R. CV-7(e)(2) ("A response to a dispositive motion shall be filed not later than 14 days after the filing of the motion. . . . If there is no response filed within the time period prescribed by this rule, the court may grant the motion as unopposed.").  Moreover, the motion is well taken.

For the reasons described above, this court does not have jurisdiction over the Olenicks' Counterclaims to the extent those claims challenge the Forfeiture Order's legality.

Alternatively, the United States argues it has not waived its sovereign immunity as to the Olenicks' Counterclaims. As an agency of the United States, the FCC is liable only to the extent that Congress has waived its sovereign immunity. *See, e.g., St. Tammany Parish, ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 316 (5th Cir. 2009) (recognizing sovereign immunity extends to the United States and "its departments"). Congress has waived immunity to a limited extent against the United States and its agencies with the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq ("FTCA").  However, Congress has not waived immunity for intentional torts, including tortious interference with contractual relations, such as the Olenicks' claim that the United States has interfered with their right to contract with Alex Jones. *See* 28 U.S.C. § 2680(h) (specifically barring claims against the Government "arising out of . . . interference with contract rights"); *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 252 (5th Cir. 2006). Accordingly, the court does not have jurisdiction over this claim.

Finally, to the extent the Olenicks' claim that the United States violated their right of association because the United States' motivation is to take Alex Jones' programming off the air[3] could be construed as a First Amendment claim, they have failed to plausibly plead a claim for which relief could be granted. Courts "have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 622 (1984). "The right to associate for expressive purposes is not, however, absolute. Infringements on that right may be justified by regulations

---

[3] The Olenicks pleaded the "USOA's motive, as confessed in the news flash that accompanied USOA's filing of this suit, is to take Alex Jones' programming off the air," Dkt. #10 at ¶ 42, but they pleaded no facts that support their bare conclusion.

9

adopted to serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms." *Id.* at 623. In the present context, the Supreme Court has expressly rejected First Amendment challenges to the FCC's licensing of radio frequencies. *Red Lion Broad. Co. v. FCC*, 395 U.S. 367, 389 (1969). "No one has a First Amendment right to a license or to monopolize a radio frequency; to deny a station license because 'the public interest' requires it 'is not a denial of free speech.'" *Id.* (quoting *Nat'l Broad. Co. v. United States*, 319 U.S. 190, 227 (1943)); *see Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 638 (1994) ("As we said in *Red Lion*, '[w]here there are substantially more individuals who want to broadcast than there are frequencies to allocate, it is idle to posit an unabridgeable First Amendment right to broadcast comparable to the right of every individual to speak, write, or publish.'"); *see also United States v. Ganley*, 300 F. Supp. 2d 200, 202 (D. Me. 2004) (rejecting defendant's argument that the licensing requirement at issue violated his First Amendment rights). Accordingly, this is not a plausible claim for relief.

For these reasons, the Olenicks have failed to state a plausible claim for relief in their Counterclaims, and the undersigned will recommend the United States' motion to dismiss the Olenicks' counterclaims be granted.

## IV.   ORDER AND RECOMMENDATION

For the reasons given above, the undersigned **RECOMMENDS** that Respondents' Rule 12 Motions (Dkt. #8) be **DENIED** and the Olenicks be ordered to answer the Complaint within 20 days of the District Court's Order on this Report and Recommendation.

For the reasons given above, the undersigned further **RECOMMENDS** that the United States' Motion to Dismiss Respondents' Original Counterclaim (Dkt. #12) be **GRANTED** and the Original Counterclaim (Dkt. #10) be **DISMISSED WITH PREJUDICE**.

## V. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battles v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

SIGNED April 2, 2019

_____
MARK LANE
UNITED STATES MAGISTRATE JUDGE